LILLIAN E. ELMORE, Appellee, v. SOUTHERN SURETY COMPANY, Appellant.

MARCH 5, 1929.

*Parrish, Cohen, Guthrie, Watters & Halloran, J. L. Parrish, Jr.,* and *Stuart S. Ball,* for appellant.

*Utterback, Forrest & Robinson,* for appellee.

FAVILLE, J.—I. The appellee was the owner of an accident insurance policy in appellant company. Said policy provided for indemnity for injuries received by accidental means, and contained the following clause:

"The effects resulting exclusively of all other causes from bodily injury sustained by the insured during the life of this policy solely through external, violent and accidental means (excluding suicide while sane or insane, or an attempt thereat, while sane or insane) and which bodily injury is sustained by the insured while driving, riding in or on, demonstrating, adjusting or cranking an automobile, or in consequence of being struck, run down or over by an automobile or caused by the burning or explosion of an automobile; but the insurance hereunder does not cover loss resulting from injury sustained while or in consequence of repairing, overhauling or testing an automobile, said bodily injury so sustained being hereinafter referred to as 'such injury.' "

The appellee was a witness in her own behalf, and described in detail the manner in which she claims her injury was inflicted. The appellant contends that the testimony of the appellee with regard to the manner in which she was injured is so inconsistent, conflicting, and improbable that it does not present a question for the determination of the jury, and that the court should, by reason thereof, have sustained the appellant's motion for a directed verdict. We shall not attempt to set out the evidence in detail. We have examined it with care, and it is true that the testimony of the appellee is not wholly consistent in all details. Her testimony on cross-examination differs somewhat from her testimony in chief. This, however, is not an unusual circumstance in the trial of lawsuits. In a general way, the appellee's story is to the effect that she was a passenger on a motor bus, which was going west on Douglas Avenue in the city of Des Moines. Said avenue enters Beaver Avenue at an obtuse angle. Her contention is that she signaled the driver of the bus to stop, and that the bus stopped at the east line of the intersection of said avenues. The appellee alighted from

the front door of the bus. Her contention is that, as she alighted the bus lurched. The evidence is not altogether clear as to what the movement of the bus was, as claimed by the appellee; but, in any event, it is her contention that there was a movement of the bus as she was in the act of alighting, which threw her off her balance, although she was on her feet. Apparently, she started east along the side of the bus, which was eighteen feet in length. Her contention is that the bus immediately started to turn south into Beaver Avenue, and that this swung the side of the bus against the appellee, and in an attempt to avoid being pushed over by the bus, she grabbed the bumper at the back end of the bus with one hand, and threw her elbow up over the bumper, and pulled herself upon it. She was in this general position when the bus moved down Beaver Avenue, and carried her for a distance of about three quarters of a mile, before the bus finally stopped at Urbandale. The appellee was then removed, and shortly afterward carried to a hospital. She claims that there were approaching automobiles, and that she was afraid to release her hold on the bumper, for fear of being run over by automobiles that were behind the bus. Her evidence is contradicted in many particulars by the driver of the bus and two passengers who were thereon. It is unnecessary that we review the apparent contradictions in the appellee's testimony. The case clearly presented a fact question for the determination of the jury as to whether or not the appellee suffered an injury as claimed by her, which was within the terms of the policy of insurance. The record is such as gives support to the conclusion of the jury, and the evidence of the appellee is not of that character that would warrant us in saying that the court should have directed the jury to return a verdict for the appellant.

II. The appellant contends that the verdict is excessive. The policy provided for weekly indemnity of two kinds, which are classified as A and B. Said provisions of the policy are as follows:

"(a) If 'such injury' shall not result in any of the losses mentioned in Section 3, but shall independently and exclusively of all other causes, immediately, continuously and wholly disable and prevent the insured from the date of accident from performing each and every kind of duty pertaining to his business or occupation, the company will pay to the insured for

the period of such disability, not exceeding twenty-six consecutive weeks, indemnity at the rate of twenty-five dollars ($25.00) per week.

"(b) Or, if 'such injury' shall not wholly disable the insured, but shall independently and exclusively of all other causes, within fifteen days thereafter, wholly and continuously disable him, or if 'such injury' alone shall, commencing on the date of accident or immediately following the total loss of time, continuously disable and prevent the insured from performing one or more material daily duties pertaining to his occupation, the company will pay for the period of such disability, not exceeding four consecutive weeks, indemnity at the rate of twelve dollars and fifty cents ($12.50) per week."

The jury awarded the appellee indemnity at $25 a week for a period of 26 weeks. Appellant contends that this is excessive. The appellee was a switchboard operator at the Des Moines Union Railway Company. She left said employment on or about August 9, 1926. The injury occurred on the 18th day of December, 1926. After appellee quit her employment as a switchboard operator, she was engaged in her household duties as a housewife. She was a married woman, and kept her own home.

Both parties assume in argument in this court that the occupation of the appellee at the time of the injury, rather than at the time the policy was written, is the occupation that must be considered under the terms of the policy, and that the occupation of the appellee at said time was that of a housewife. Appellee's contention at this point is that the injury was of such a character that it disabled and prevented her from performing each and every kind of duty pertaining to her occupation as a housewife, for the period of twenty-six weeks. The appellee invokes the rule that the performance of trivial and inconsequential duties in connection with the occupation of the insured does not prevent recovery of the full indemnity provided by the policy. See 5 Joyce on Insurance, Section 3032, and many cases cited.

Immediately after the injury, the appellee was taken to a hospital. She testified as follows:

"I got out of the hospital the 3d day of January. I was

taken immediately after that to 1171 Fourteenth Street Place. Mr. Elmore took me there. When I got there, I went to bed. That was the evening of January 3d. I left there that night. I went to bed, and stayed until about 10 o'clock, and from there I went over to Green's, where I stayed and was in bed two days, and then was taken out to my home on Douglas Avenue, 4518 Douglas. After going out on Douglas Avenue, I was in bed there, off and on, for a month. I was not in bed all the time. I was up and down; I got up and laid down part of the time. For about a month after I got out of the hospital, I was able to walk around, but I was not able to do anything. After that month was up, I could get my meals and help myself that way. I could help with the dishes. I didn't sew any; I was too nervous to sew. I didn't do any housework or brush up the house any or sweep it up. That is true the first month I was out of the hospital. As time went on, I got my own meals and washed the dishes; that was about all. I have not done much more than that since. I haven't done anything more than that since, around the house. Q. Didn't you do some painting around the house there? A. I painted the woodwork in the kitchen, a little at a time,—yes. Q. You, I believe, heretofore testified you did that within two months after you got out of the hospital? A. Yes, sir. Q. Didn't you clean up after the carpenters? A. No, sir; I brushed up a little of their shavings, after they left. I walked around through the building. Q. That was within these two months after you left the hospital? A. Somewhere along there, yes. I was over there all the time while they were doing this building. Q. That was true the second month after you were out of the hospital, was it not? A. Well, that was two months and more, two or three months after that, when they were finishing up,—yes. Q. Didn't you put a shelf in one of these houses? A. I lifted up a board and laid it up on side pieces the carpenter put there. Q. That was within two months after you got out of the hospital? A. Yes, sir. Q. You have just been superintending the work there before you were injured, haven't you? A. Yes, sir. Q. You continued to do that after the first month? A. It was after the second month, I didn't do anything. If lifting up a board is work, then it is work, and that is all I did. Q. You superintended your men? A. I superintended my men, yes. Q. After the first month, after you were out of the

hospital, then the second month and third, you kept your men working, so far as superintendent and such things as that? A. No, sir, I didn't do any more work. Q. Didn't you superintend the work during that time? A. Yes, sir. Q. That is what you had been doing, prior to the accident? A. Yes, sir, telling them what to do, if that is what you mean.''

A doctor who examined her testified that he found the coccyx broken loose from the rest of the spinal column,—that is, the last two vertebrae were broken from the other vertebrae to which they had been attached. One physician testified that the appellee would be able to do some housework, and general work, probably without distress, after a period of about three months after the injury. Another physician said that appellee was completely disabled for three months. One of the physicians who attended the appellee testified that the appellee's fracture was ununited at the time of the trial; that the tissues were healed; but that there was a separation of the bones.

The policy in suit provides for total indemnity where the injury is of such a character as to continuously and wholly disable and prevent the insured from performing every kind of duty "pertaining to his business or occupation." This provision differs essentially from policies which provide for indemnity where the insured is "prevented from performing *any* work or following *any* occupation for compensation or profit." We reviewed and distinguished the cases in *Hurley v. Bankers Life Co.*, 198 Iowa 1129, and *Corsaut v. Equitable Life Assur. Soc.*, 203 Iowa 741. The policy in suit has no reference to the whole range of pursuits. It provides for indemnity in the event that the insured is prevented from following the particular business or occupation of the insured, even though the insured might be able to perform, to some extent, some other business or occupation. As bearing on this question, see *Pennington v. Pacific Mut. Life Ins. Co.*, 85 Iowa 468; *McKinley v. Banker's Acc. Ins. Co.*, 106 Iowa 81; *Marren v. Fidelity & Cas. Co.*, 188 Iowa 363.

We are not informed as to the instructions given by the trial court. They are not incorporated in the abstract, and are not challenged. We must assume that they correctly stated the rules of law applicable to the case. The sole contention of appellant at this point is that the verdict ''is excessive, and contrary to the evidence in the case, in that recovery is allowed plaintiff for

total disability for all of twenty-six weeks, whereas the evidence clearly showed that for more than half that time plaintiff was able to perform many of the duties of her occupation as a housewife.''

We think the record is such as to establish that appellee was not totally disabled from performing her duties as a housewife for the full period of twenty-six weeks. We think appellee was only entitled to recover, under Clause A of the policy, for a period of thirteen weeks, and under Clause B of the policy, for four weeks thereafter. If a remittitur reducing the judgment to said amounts, with interest, is not filed by appellee within thirty days, the cause will be reversed.

III. It is contended that the court erred in submitting testimony with regard to the physical condition of the appellee, and the fact that she gave premature birth to a baby, the second night after the accident in question, and that the baby lived four days. We do not think that the admission of this testimony, in view of the entire record in the case, constituted reversible error. The severity of the injury to the appellee was a proper matter for the consideration of the jury. The fact of her pregnancy and the untimely birth of the child had some bearing upon the question of the extent of her injury and of her physical condition as a result thereof.

IV. Appellant contends that the court should have directed a verdict in behalf of the appellant on the ground that no written notice or proofs of loss covering the accident sued on were furnished by the appellee, in compliance with the mandatory provisions of the policy. Written notice of the injury was sent to the appellant on December 27, 1926. Said notice appears to have been upon a form furnished by the company. The portion of said notice that is challenged is as follows:

''State here, fully and precisely, what you were doing at the time and how the accident occurred.''

''Had just alighted from a D. M. City R. R. motor bus and was waiting for the same to pass by so I could cross the street.''

It is contended by appellant that this statement is so inconsistent with the appellee's claim as made upon the trial as to

constitute no notice of the injury of which appellee in fact complains. We think this objection is hypercritical. The proof of loss did not call for any detailed or itemized statement of the injury. It was obviously intended to call for a general statement. The report of the appellee was upon the form furnished by the appellant, and substantially responded to the requirements of said form. If more minute detail was expected to be furnished by the appellee, the form should have been more explicit in its requirements.

We find no other reversible error in the record, except as above indicated, and the judgment appealed from is—*Affirmed on condition.*

ALBERT, C. J., and EVANS, KINDIG, and GRIMM, JJ., concur.