## 25846. METROPOLITAN LIFE INSURANCE COMPANY v. McDEVITT.

Decided March 3, 1937.

*Smith, Smith & Bloodworth, W. H. Smith,* for plaintiff in error.

*T. J. Lewis,* contra.

Guerry, J. On August 6, 1919, the plaintiff in error issued to Mrs. Helen E. McDevitt a policy of insurance which provided, among other things, that "The Metropolitan Life Insurance Company, in consideration of an additional premium of . . , doth hereby agree, that if, while the above-numbered policy is in full force and effect and before default in the payment of any premium, the company receives due proof that the insured, as the result of injury or disease occurring and originating after the issu-

ance of the policy, has become totally and permanently disabled so as to be unable at any time to perform any work or engage in any business for compensation or profit, the company will allow the following benefits:" etc. On January 31, 1936, Mrs. Mc-Devitt filed suit to recover the benefits so provided, alleging that on or about the first day of January, 1931, while said policy was in full force and effect, she suffered complete loss of her hearing in both ears, as a result of which she was rendered totally and permanently disabled within the meaning of said contract. By amendment she alleged that during the year 1925, while said policy was of full force and effect, she became deaf to such an extent that she was forced to give up her employment as a stenographer on or about the first of March, 1925, and that on or about the first of January, 1931, she suffered complete loss of her hearing. The defendant contended at the trial: (1) That the insured did not become totally and permanently disabled as the result of injury or disease occurring and originating after the issuance of the policy, but that the alleged deafness, on account of which she now claims to be totally and permanently disabled, originated before the issuance of the policy. (2) That she was not totally and permanently disabled. The plaintiff introduced in evidence proof of loss submitted to the company, dated June 7, 1934, in which she stated that her sickness or injury was deafness, that she became totally disabled thereby in February, 1925, and that she was first treated by a physician about fifteen years ago. Attached to the proof of loss was an attending physician's certificate, in which were the following: Question: "On what date were you first consulted on account of the present injury or sickness?" Answer: "Fifteen to eighteen years ago." The certificate stated that the present injury or sickness of insured was "otosclerosis (ears)."

1. While we may agree that under the terms of the policy the insurer would not be liable for any injury or disease occurring and originating before the issuance of the policy, and while it may further appear that the insured had been treated for impairment of her hearing or at least for some trouble with her ears before the issuance of the policy, it does not appear by evidence that a continuation of this prior trouble was a continuation of the disease that twelve years later caused her total deafness. The judge was warranted in finding that the disease shown or complained of

did not originate before the issuance of the policy. This court is unable to say, as a matter of law, because an insured is at one time a sufferer with a named or particular trouble, and that later she is again troubled with a like condition, that the second condition is a continuation of the first and may be said to have originated with the first condition and been present all the time, and that naturally and as a matter of course the one follows the other. The proof of loss submitted by the insured in August, 1934, merely recited that some fifteen years previously she had been treated by a doctor for trouble with her ears. We can not say that for this reason no contract was ever entered into between the parties whereby any subsequent trouble by the insured with her ears was not covered thereby. A different situation might exist if the evidence had shown that the subsequent trouble was a continuation of the first injury or disease of the ears.

2. At the time of the issuance of the policy the insured was making $90 per month as a stenographer. She married in 1924, and gave birth to a child in October, 1925. She gave up her position as stenographer in February, 1925. She testified: "When I had to give up that position I could not hold it because I could not come up to the requirements of my position. I was a nervous wreck. I could not take dictation. . . I could not answer the telephone. I could not talk to anybody or answer questions. I was a wreck; so I quit. Since I gave up my position I have not been engaged in any occupation or business for compensation or profit. I have not been able to get anything." The evidence discloses that she had been doing housework since that time and gave birth to another child in 1934. She testified that she had been totally deaf since 1931, and her claim was filed with the insurer in 1934. Under the evidence the insured did not become totally deaf until January, 1931. She had not worked as a stenographer since March, 1925. Her first child was born in October, 1925. Under the evidence, she is totally incapacitated to perform the duties of a stenographer. There is no evidence in the record that she has had to depend on her earning capacity as a stenographer for a living. In *Cato* v. *Ætna Life Insurance Co.*, 164 *Ga.* 392 (138 S. E. 787), it was said: "Total disability exists when one is totally disabled from pursuing the usual and customary duties of his employment on which he depends for a living." In *Pru-*

*dential Insurance Co.* v. *South,* 179 *Ga.* 653 (177 S. E. 499, 98 A. L. R. 781), it was said: "The expressions 'any occupation' and 'any work' were thus converted into words of concrete significa-tion, and should be construed to mean the ordinary employment of the particular person insured, or *such other employment,* if any, approximating the same livelihood, as the insured might fairly be expected to follow, in view of his station, circumstances, and phys-ical, and mental capabilities." It was further said that if the insured is so incapacitated that substantially all of the material activities of *any employment* are closed to him, he is totally dis-abled. Mere proof, as in the *South* case, of the loss of an arm, without more, did not entitle plaintiff to a recovery. Deafness does not of itself entitle plaintiff to compensation as for total dis-ability without such other circumstances, applicable to the insured, as to show that such disease or injury renders her totally and per-manently disabled within the meaning of the policy. See *New York Life Ins. Co.* v. *Thompson,* 50 *Ga. App.* 413 (178 S. E. 389). Even if the evidence in this case might be so construed as to show that the insured left her position in 1925 because of deaf-ness, she did not prove that she was totally incapacitated because of deafness at that time, but on the contrary alleged and proved that this situation did not arise until 1931. So far as appears from the record, she assumed the duties of a wife and mother, and has been performing the duties incident to a housewife since 1925. Another child has been born since total deafness arose. She has been dependent on her position as wife, mother, and housewife, and there is no evidence that she is totally and permanently dis-abled from performing such duties or that she has not continued to perform such obligations. We are unwilling to hold that she of whom Solomon spoke when he said, "She looketh well to the ways of her household, and eateth not the bread of idleness," is not pursuing, or capacitated to pursue, a gainful occupation such as she might be expected to follow. The evidence does not disclose that she was prevented "from pursuing the usual and customary duties of" the "employment on which" she "depends for a liv-ing." *N. Y. Life Ins. Co.* v. *Thompson,* supra. The fact that the insured had an occupation at the time the policy was issued, and that fifteen years later she was incapacitated from performing the duties of such occupation, does not of itself show that she is so

totally and permanently disabled as to be unable at any time to perform any work or to engage in any business for compensation or profit, when it is also made to appear that she had not engaged in such former occupation within ten years, and that she was and had been a housewife and mother and not incapacitated from performing the duties pertaining to such occupation. Under the facts of this case we think no total disability is shown, and the judgment of the judge who tried this case without the intervention of a jury, finding in favor of the plaintiff, was erroneous.

*Judgment reversed.* *Broyles, C. J., and MacIntyre, J., concur.*