# Richmond

## CARMEN C. CHAVEZ v. THE CONTINENTAL INSURANCE COMPANY.

June 10, 1977.
Record No. 760523.
Present: All the Justices.

*William B. Moore (Phillips, Kendrick, Gearheart & Aylor,* on brief), for plaintiff in error.

*Frank B. Miller, III (Edward A. Marks, Jr.; Sands, Anderson & Marks,* on brief), for defendant in error.

Cochran, J., delivered the opinion of the Court.

Carmen C. Chavez filed a motion for judgment in the trial court against The Continental Insurance Company seeking to recover the principal sum of $50,000 under an insurance policy providing for such payment for permanent total disability. On her appeal from the final order of the trial court striking her evidence and entering summary judgment for Continental, the only question is whether the evidence presented by Mrs. Chavez was sufficient to create a jury issue.

Mrs. Chavez, the wife of an employee of Eastern Air Lines, Inc., was insured under a group accident policy issued by Continental to insure eligible employees of the airline "and their eligible dependents, if any," against loss from death or specified bodily injuries caused by accident. Chavez was already insured as a Class I Insured, an eligible, regular, permanent employee, when his wife was added to the policy in January, 1970, as a Class II Insured, the "spouse" of a Class I Insured.

Endorsement No. 7 amended the coverage of the policy to include permanent total disability, therein defined as follows:

"*Permanent Total Disability* means such disability commencing within 180 days from the date of accident and continuing for twelve consecutive months, which shall prevent the Insured from engaging in any occupation or employment for which he is fitted by reason of education, training and experience for the remainder of his life."

Chavez was insured for the principal sum of $100,000, and his wife for $50,000, and all premiums were paid through monthly deductions from his pay. The principal sum, reduced by any other payments made by Continental under the policy, was payable for permanent total disability. There is no dispute that the amount to which Mrs. Chavez is entitled, if she is totally permanently disabled, is $50,000, plus interest and costs.

The evidence, viewed in the light most favorable to her, shows that Mrs. Chavez was injured in an automobile accident on October 12, 1970, when her vehicle was struck in the rear by another car. Mrs. Chavez suffered injury to her spine, abrasions and contusions on her legs, and injuries to her left shoulder and above her right eye. She received no broken bones. After being treated in the emergency room of a hospital she was treated by her family doctor. She suffered from headaches, vomiting, difficulty in swallowing, weakness, weight loss of 20 pounds in approximately two weeks, difficulty in walking, and pain and stiffness. She remained in bed for the first three and a half weeks after the accident. Thereafter, she underwent physical therapy at a hospital for two and a half to three months. Persistent stiffness from her neck to her legs, causing difficulty in movement, prompted her to consult a orthopedic surgeon, Dr. James J. Scheiner, who put her in a hospital where she remained from January 24, 1971, until February 12, 1971, and was treated with traction, physical therapy twice a day, rest, medication, and injections. Although her condition improved somewhat as a result of her hospital stay, she had remained under Dr. Scheiner's care ever since 1971.

Mrs. Chavez, a native of Colombia, South America, graduated from high school there in 1957. For approximately a year she received training as a hairdresser before emigrating

in 1958 to the United States, where she was employed as a hairdresser in the Washington, D. C., area until her accident. There was evidence that as a result of her injuries Mrs. Chavez was unable to engage in hairdressing, the only work she had ever done for wages. She had tried several times to resume this work but each time after a few hours she could not continue because of pain and stiffness. There was no evidence that she had sought any other employment. She testified that she could not work as a manicurist, that she was "not a real estate lady," and that she did not know "what there is to do." At the time of trial she was still wearing braces because of her physical condition.

Mrs. Chavez had two children, including a daughter born in 1973. The birth was normal, and Mrs. Chavez was able to care for the baby and to roll her around the neighborhood in a carriage. There was evidence that Mrs. Chavez could do only light housework after the accident and that her husband and son helped her about the house. For some months after the accident her mother-in-law stayed with them to assist her. Mrs. Chavez had resumed cooking for the family and had entertained friends at dinner, but her husband usually set the table. He also shopped for groceries and washed the dishes. Mrs. Chavez testified that she did her own housework, but that she had to take her time and do it slowly.

Mrs. Chavez drove an automobile before her accident, but was unable to do so afterwards, and in riding as a passenger for more than 40 or 45 minutes she found it necessary to stop, rest, and walk before continuing. Some nine months prior to the trial, she and her family flew to Orlando, Florida, for several days and visited Disney World twice for a few hours each visit, during which Mrs. Chavez was moved about in a wheelchair. Five months before the trial, Mrs. Chavez and her family made a trip by air to Bogota, Colombia, to visit her parents for 20 days. When they changed airplanes in Miami, Mrs. Chavez walked; when they arrived at the Bogota airport, and again when they departed, Mrs. Chavez walked the distance between the airplane and an automobile. There was evidence that during the flights Mrs. Chavez walked in the aisle of the airplane to avoid prolonged sitting. There was also evidence that Mrs. Chavez was sick in Bogota, spent the first two days in bed, rested, and during her visit only went out of the house for sight-seeing once or twice.

Dr. Scheiner testified that in his opinion Mrs. Chavez suffered chronic musculo-ligamentous strain of the cervical spine (neck), thoracic spine (region of the shoulder blades), and lumbar spine (region of the pelvis); that he had found that if orthopedic injuries do not heal within a year, there will probably be no healing; and that his objective findings substantiated the complaints which Mrs. Chavez had voiced for almost five years since her accident.

Dr. Scheiner had advised Mrs. Chavez to avoid lifting anything over 15 or 20 pounds. She was unable to participate in athletics, do heavy housework or anything which required much bending, stooping, climbing, jumping, or running, and she was to avoid prolonged standing and prolonged sitting. He testified that Mrs. Chavez could only work part-time and then only in a "sedentary type of occupation, probably as a receptionist, or something which involves basically sitting for a few hours at a time." He did not know her qualifications for work as a receptionist. In his opinion she was permanently and totally disabled for her previous employment as a hairdresser.

Chavez testified that his wife could not write English very well, and there was evidence that she had difficulty with the spoken language.

In striking the plaintiff's evidence, the trial court relied upon *Travelers Ins. Co.* v. *Brinkley,* 166 Va. 147, 184 S.E. 225 (1936), where the policy provided coverage for an insured who became totally and permanently disabled from engaging "in any occupation or employment for wage or profit." We held that it was reversible error to construe this language to mean that if the insured was prevented from following his usual occupation, he had a total permanent disability. We held that it was a matter of common knowledge that loss of the use of a hand did not wholly incapacitate a man from engaging in any occupation for compensation, and that the facts did not warrant a finding of total permanent disability under the policy.

Total and permanent disability, as the term is used in policies similar to that in *Brinkley,* means "the inability to do substantially all of the material acts necessary to the prosecution of any occupation for remuneration or profit in

substantially the customary and usual manner in which such occupation is prosecuted." *Atlantic Life Insurance Company* v. *Worley*, 161 Va. 951, 960, 172 S.E. 168, 172 (1934). It does not mean absolute incapacity, mental and physical. *Carver* v. *Metropolitan Life Ins. Co.*, 191 Va. 265, 271, 60 S.E.2d 865, 867-68 (1950). Thus in *Carver*, where the evidence of the insured, a man of limited education, was that he was incapacitated from working as a laborer or farm hand or as manager of a produce farm, all of which work he had previously done, we held that it was a jury question whether he was permanently and totally incapacitated for gainful employment.

The language of the policy under review differs from that of the policies which we have heretofore construed. In defining permanent total disability as disability preventing the insured from engaging in any occupation or employment for which he is fitted by reason of his education, training, and experience, Continental has merely incorporated into its policy the definition formulated by judicial construction by appellate courts in many jurisdictions. Such construction, representing what is known as the "intermediate" view, has provided an alternative to the two more extreme views, one holding that the insured is totally disabled when he is unable to perform the duties of his particular occupation only, and the other holding that total disability exists only when there is inability to pursue any occupation whatever. *See* Annot., 21 A.L.R.3d 1155, 1165.

Various courts have reviewed and explicated disability provisions similar to that of the Continental policy. Thus, in *Ginsburg* v. *Insurance Company of North America*, 427 F.2d 1318 (6th Cir. 1970), the court, construing such a provision under Kentucky law, held that evidence that a nurse-anesthetist was incapacitated by injuries sustained in an automobile accident from performing over an eight-hour day the duties of her former jobs as a registered nurse, parachute stringer, whisky store clerk, and hospital clerk presented jury questions as to whether ability to pursue those occupations would bar recovery under the policy and, if so, whether the insured was disabled from performing them. Relying on *Mutual Life Ins. Co. of New York* v. *Bryant*, 296 Ky. 815, 177 S.W.2d 588 (1943), the court held that the insured

was not required to prove that she was disabled from occupations for which she was not qualified or from occupations that were substantially beneath her level of training and education.

A similar disability clause was construed in *Stout v. Central National Life Insurance Company*, 522 S.W.2d 124 (Mo. App. 1975). In that case the court held that a jury issue was created as to disability where there was evidence that a factory worker, with an eighth-grade education and no clerical skills who had worked for 22 years as a hand assembler for coin vending machines, was incapable of performing substantially all the material acts of factory work involving assembly by hand and manual dexterity.

Mrs. Chavez argues that she meets the requirements of the definition of permanent total disability under the policy because the evidence shows that the accident has rendered her incapable of working as a hairdresser, the only gainful employment she ever had and the only occupation for which, at the time of her accident, she was fitted by reason of her education, training, and experience. Counsel for Continental, conceding that there was evidence that Mrs. Chavez could no longer work as a hairdresser, maintains, however, that she was insured under the policy as her husband's wife and that the evidence shows that she was engaged in the occupation of a housewife, for which she was qualified, and the duties of which she performed both before and after the accident. Counsel for Mrs. Chavez, acknowledging in oral argument that performance of the duties of a housewife could be an "occupation" within the meaning of the policy, maintained that her occupation was that of a hairdresser, and that there was no evidence that she was fitted to be a housewife by reason of education, training, and experience. He further contended that if there was such evidence, it created an issue to be resolved by the jury, together with the issue, as to which unquestionably there was evidence, whether she was disabled from functioning as a housewife.

■ Total and permanent disability provisions should be liberally construed in favor of the insured, *Atlantic Life Ins. Co. v. Worley, supra,* 161 Va. at 965, 172 S.E. at 173, and any ambiguity will be resolved against the insurer, which prepared the policy. Continental could have explicitly excluded from

coverage any eligible employee's spouse who had any occupation other than that of housewife. It did not do so. Except for identifying Mrs. Chavez as the spouse of an eligible employee and thereby entitled to reduced benefits the policy contained no express limitation on her right to recover that did not apply to her husband.

■ Under the policy definition of permanent total disability, the insured is required to prove inability to engage in any occupation or employment, whether paid or unpaid, for which she is fitted by reason of education, training, and experience. We construe this to mean that the insured must show disability that, first, prevents her from continuing in the occupation or employment in which she was engaged at the time she was incapacitated, and second, prevents her from performing the duties of any other occupation or employment for which she is fitted by reason of education, training, and experience. She must show inability to do substantially all the material acts necessary to the prosecution of the occupation or employment in substantially the customary and usual manner in which such occupation or employment is performed. This construction is, we believe, a reasonable interpretation of the language of the policy, and is not inconsistent with principles heretofore approved by us in *Carver* and *Worley*.

■ Performance of the duties of a housewife has been held to be an occupation under the disability provisions of insurance policies. *Elmore* v. *Southern Surety Co.*, 207 Iowa 872, 224 N.W. 32 (1929); *Zoni* v. *Mutual Life Ins. Co. of N. Y.*, 153 Pa. Super. 1, 33 A.2d 445 (1943); *Frace* v. *Mutual Life Ins. Co. of N. Y.*, 151 Pa. Super. 354, 30 A.2d 380 (1943); *Metropolitan Life Ins. Co.* v. *McDevitt*, 55 Ga. App. 342, 190 S.E. 404 (1937); Annot., 149 A.L.R. 7, 102. Thus, if Mrs. Chavez was engaged in the occupation of a housewife at the time of her accident, she would be denied recovery if she failed to prove that she was disabled from functioning as a housewife. But a housewife has been defined as "a married woman who occupies herself with the domestic affairs of her household *and engages in no employment for pay or profit.*" (Emphasis added.) Webster's Third New International Dictionary 1097 (1969). Therefore, we hold that Mrs. Chavez, a wife and mother who, like countless other married women, was employed in a job for remuneration, was not engaged in the

occupation of a housewife within the meaning of the policy. It follows that she was under no burden to prove that she was permanently disabled from functioning as a housewife.

Mrs. Chavez had only to show that she was permanently disabled from her occupation as a hairdresser, and from any other occupation or employment for which she was fitted by reason of her education, training, and experience. Her evidence was sufficient to create a jury issue, and the trial court erred in striking her evidence and entering summary judgment for Continental.

For the reasons assigned, we will reverse the judgment of the trial court and remand the case for a new trial.

*Reversed and remanded.*