OHIO NATIONAL LIFE ASSURANCE CORPORATION, Plaintiff,

v.

W. Gary CRAMPTON, et al., Defendants.

Civ. A. No. 3:93CV230.

United States District Court,
E.D. Virginia,
Richmond Division.

June 8, 1993.

Donald W. Lemons, Durette, Irvin, Lemons & Federson, P.C., Richmond, VA, for plaintiff.

Robert Edward Kane, Jr., Richard Tyler McGrath, Kane, Federson & Jeffries, Richmond, VA, for defendants W. Gary Crampton and L. Andrew Duke, Jr.

## MEMORANDUM OPINION

RICHARD L. WILLIAMS, Senior District Judge.

This matter is before the Court on plaintiff's request for declaratory judgment and defendants' motion for summary judgment. Plaintiff's Complaint asks the Court to interpret two of its disability income insurance policies to determine whether policyholder Andrew Duke ("Duke"), and his assignee, Gary Crampton, are entitled to benefits thereunder. Since neither the relevant policy language nor any other material issues of fact are in dispute, the Court, with the agreement of counsel, converted defendants' Rule 12(b)(6) motion—argued on May 21, 1993—to a motion for summary judgment under Rule 56. Both sides were given an opportunity to submit supplemental briefs in support of their respective positions. On June 4, 1993, the last of these supplemental pleadings was received by the Court, and the case became ripe for decision.

### I. *Background*

On September 13, 1982, Ohio National Life Assurance Corporation ("Ohio National") issued to Duke disability income policy No. H6017412. On January 1, 1988, it issued Duke an additional policy of disability income insurance—No. H6094783. Both policies provide for total and residual disability benefits which are keyed to the insured's loss of income and/or inability to work.

Both policies define "total disability" or "totally disabled" in essentially the same language: "You: (a) cannot do the substantial and material tasks of your own job due to injury or sickness; (b) are not now working and earning an income; and (c) are under a physician's care." [1] Neither policy contains an exclusion for a disability caused by an intentional act, a violation of the law or incarceration. The 1982 policy originally contained, *inter alia,* an exclusion for disabilities caused by intentional, self-inflicted injury or illness, and another for disabilities attributable to the insured's commission or attempted commission of a felony. In 1985, however, Ohio National notified Duke and other policyholders owning similar policies that it would no longer apply these exclusions. The 1988 policy, in accordance with that decision, did not contain these exclusions.

On July 6, 1992, at which time both policies were in effect, Duke was arrested and charged in Virginia with several counts of aggravated sexual battery and exposing himself to a minor. He was thereafter released on bond. On January 13, 1993, Duke pled guilty to four counts of aggravated sexual battery and eight counts of exposing himself to a minor. He was incarcerated on January 13, 1993 and sentenced, on March 17, 1993, to 80 years of imprisonment, with 72 suspended.

Duke filed a claim with Ohio National for payment of disability benefits in November 1992, claiming total and continuous disability

---

1. This language is found in the 1982 policy. The 1988 policy's definition of "totally disabled" differs only insignificantly and, accordingly, the Court can consider the policies in tandem in rendering its decision.

from the date of his arrest. The cause of his disability was described by his attending physician as anxiety and depression.[2] Since the date of Duke's guilty plea, Ohio National has made all payments under the policies while reserving the right to demand repayment should it later be determined that Duke is not entitled to benefits.

## II. *Analysis* [3]

Ohio National argues that Duke is not entitled to benefits under the policies for two reasons. First, it claims that Duke's alleged sickness, the direct result of a "deliberate act," is not covered under either of the policies. It argues that, even if the Court construes the policies to cover such a disability, Virginia public policy—which is read into every contract entered into in the Commonwealth—precludes a criminal actor like Duke from profiting from his own wrongdoing. Second, Ohio National contends that Duke's incarceration is a superseding legal disability which, because it prevents Duke from performing the substantial and material tasks of his job regardless of any claimed mental sickness, should preclude him from receiving benefits under the policies.

### A. *Duke's Entitlement to Benefits under the Policy*

■ In determining questions of insurance coverage, courts ordinarily look to the four corners of the document creating the coverage. *Quesenberry v. Nichols*, 208 Va. 667, 159 S.E.2d 636, 640 (1968). Virginia law dictates that total and permanent disability provisions are to be liberally construed in favor of the insured and any ambiguity re-

solved against the insurer—which could have explicitly excluded from coverage any disability. *Chavez v. Continental Ins. Co.*, 218 Va. 76, 235 S.E.2d 335, 339 (1977). Indeed, even if the policies contained language purporting to exclude a disability arising out of or related to commission of a crime, any such language would be construed most strongly against the insurer. *St. Paul Fire & Marine Ins. Co. v. S.L. Nusbaum & Co.*, 227 Va. 407, 316 S.E.2d 734, 736 (1984).

■ The law dictates that the Ohio National policies in question cover Duke's alleged disability, regardless of the fact that it stemmed from his commission of criminal acts. Insurers like Ohio National clearly have the capacity to exclude certain types of disabilities from coverage in their policies. As in *Chavez*, in which the Virginia Supreme Court held in the insured's favor, Ohio National here "could have explicitly excluded from coverage" disabilities stemming from intentional, self-inflicted illnesses or sicknesses resulting from an insured's criminal activities. 235 S.E.2d at 339.[4] Ohio National's ability to exclude such disabilities from coverage in this case is patent; it actually did so in its 1982 policy, until it shifted course in 1985 and stopped excluding self-inflicted disabilities and disabilities incurred due to the commission or attempted commission of a felony.

Ohio National cannot salvage its decision to stop excluding Duke's type of disability from coverage by invoking "public policy." This is especially true because there is no evidence whatsoever that Duke obtained the

---

2. Whether Duke actually suffers from a mental sickness sufficient to prevent him from performing the substantial and material tasks of his job is not before the Court in this declaratory judgment action. The Court offers no opinion whatsoever as to the validity of Duke's claimed disability; for purposes of this action, the Court assumes that Duke's disability claim is medically legitimate.

3. An incarcerated criminal wrongdoer's entitlement to insurance benefits for a disability suffered as a result of his willful participation in criminal activity appears to present a question of first impression in Virginia.

4. The Fourth Circuit has twice endorsed this approach, although in neither instance was it engaged in the interpretation of Virginia law. In *Zurich General Accident & Liab. Ins. Co. v. Flick-*

*inger*, 33 F.2d 853 (4th Cir.1929), a pre-*Erie* case decided according to general principles of common law, the Fourth Circuit found that, in the absence of a provision exempting an insurer from liability for injuries sustained as a result of a violation of law, the insurer was liable if it did not appear that the policy was obtained in contemplation of such violation. *Id.* at 855. The court held that "[i]f insurance companies desire to avoid liability on such ground, they should insert a clause in their policy to that effect." *Id.* at 856. In a more recent case involving the interpretation of North Carolina law, the Fourth Circuit reaffirmed these principles. *Metropolitan Life Ins. Co. v. Henkel*, 234 F.2d 69 (4th Cir. 1956).

policies in contemplation of committing a crime or otherwise in a fraudulent manner. Public policy does not mandate that the Court rewrite a contract for an insurance company which winds up later regretting its decision to remove certain exclusions from its policies.[5]

### B. *The Effect of Incarceration*

 Ohio National argues that, even if Duke was entitled to disability payments prior to his incarceration, such entitlement ceases when he is in prison. It contends that the superseding legal disability of incarceration overrides any pre-existing physical or mental disability and should cut off payments. But it appears plain to the Court that, as a matter of law, incarceration cannot act as an absolute bar to the receipt of disability insurance benefits. The preclusive effect of Duke's imprisonment on his entitlement to collect benefits hinges on the validity of the underlying disability. If the disability is medically bona fide and genuinely arose prior to Duke's incarceration, the fact that Duke was eventually imprisoned does not cut off his benefits.

The cases cited by Ohio National in support of its contention that incarceration is a superseding cause of Duke's disability are importantly different from the one *sub judice*. They involved persons convicted of crimes who were otherwise physically and mentally healthy prior to their incarceration. Hence, in their cases, it was *only* the "legal disability" of imprisonment that precluded them from working and gave rise to their claim for benefits. If Duke's alleged disability passes medical muster, such clearly will not be the case here, because Duke's mental sickness, and not his incarceration, will be the true cause of his inability to work. If Duke was placed on probation or his guilty plea thrown out for some reason, he would remain unable to work in his currently alleged mental state. The Court fully agrees that:

> [A]n insured may be continuously disabled and prevented from performing any and every duty pertaining to his occupation through disease, even though he is confined in prison during the entire period of his disability ...

15 G. Couch Cyclopedia of Insurance Law § 53.41 (2d ed. 1983).[6]

### III. *Conclusion*

For the reasons set forth above, defendants are entitled to judgment as a matter of law. Accordingly, their motion for summary judgment is granted. As long as Duke is genuinely disabled under the policies, he is entitled to continue receiving benefits thereunder.

---

**5.** In accordance with this ruling, the Court holds that Duke is also entitled to a waiver of premiums on the policies.

**6.** Of course, Ohio National remained perfectly able to exclude from coverage disabilities due to incarceration. It elected not to do so.