ALLMERICA FINANCIAL LIFE INSUR-ANCE & ANNUITY COMPANY, a Delaware corporation, fka SMA Life Assurance Company, Plaintiff,

v.

Jay Kent LLEWELLYN, Defendant.

Civil No. 94–1309–JO.

United States District Court, D. Oregon.

July 23, 1996.

Heidi D. Robinson, Markowitz Herbold Glade & Mehlhaf, P.C., Portland, OR, John A. Bennett, Bullivant Houser Bailey Pendergrass & Hoffman, Portland, OR, for Plaintiff.

Bernard Jolles, Jolles Sokol & Bernstein, Portland, OR, for Defendant.

ROBERT E. JONES, District Judge:

This case involves a disability insurance coverage dispute. Plaintiff (Allmerica) seeks declaratory relief on the issue of whether Defendant is entitled to benefits under an insurance policy issued by Plaintiff. This action is before the Court on Plaintiff's Motion for Summary Judgment (# 30–1). After full consideration of the arguments, Plaintiff's Motion for Summary Judgment is GRANTED.

## FACTS

Defendant was a chiropractor when he obtained disability insurance from Plaintiff in 1986. For several years, Defendant was under investigation for work-related fraudulent activities. In September 1987, the Oregon Attorney General's Office filed civil and criminal claims against Defendant under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C.A. § 1962. The State alleged that Defendant billed SAIF Corporation for patients who did not attend their scheduled appointments and altered patient records to indicate treatment.

In addition to the RICO claims, the Oregon Board of Chiropractic Examiner's ("OBCE") notified Defendant that it intended to investigate his business activities and revoke his license to practice chiropractic medicine. After an extensive investigation, in February 1991, the OBCE filed a Proposed Order in which it concluded that Defendant violated: (1) standards of ethics in Oregon Administrative Rule 811–35–020, (2) Oregon Revised Statutes ("ORS") 684.100(1)(j) by collecting a fee through fraud and misrepresentation, and (3) ORS 684.100(1)(g)(A) by testifying inaccurately under oath, altering client charts, and billing insurance companies for patient "no shows." On May 23, 1991, this Proposed Order became a Final Order which revoked Defendant's chiropractic license. Though Defendant states that he was not aware of the revocation until a week or two weeks later, he closed his office the next day on May 24, 1991.

A few weeks later, on June 13, 1991, Defendant filed a claim for disability benefits with Plaintiff under the disability insurance policy ("Policy"). On the claim form, Defendant listed "Depression" as the sickness or injury which prevented him from working.[1] Defendant testified that the roots of his depression included, in part, the criminal investigation and the revocation of his license, but also encompass work-related stresses caused by patient care, management, insurance companies, and lawyers.[2]

The provision of the Policy governing the conditions necessary for entitlement to disability benefits reads:

> If you suffer total disability, we will pay the monthly benefit for total disability at

---

1. After oral argument, Defendant supplemented the record with affidavits from a physician (Dr. Harrison) and a psychologist (Dr. Fleming). Dr. Harrison first treated Defendant on April 1, 1994, and states, "The disabling stress that defendant experienced, and continues to experience, developed over a period of several years prior to 1991." Harrison Aff. ¶ 4. Dr. Fleming first treated Defendant on July 15, 1991, and similarly states, "The disabling stress that defendant experienced, and continues to experience, developed over a period of years, beginning in approximately 1988." Fleming Aff. ¶ 5. Defendant's treatment with both doctors started after the revocation of his license on May 23, 1991.

2. In his deposition, Defendant listed the specific stresses which contributed to his disability: (1) malpractice cases, (2) the 1985 raid on his office by police, (3) being investigated for two and a half years, (4) being the defendant in a RICO suit by the State, (5) having his license revoked, (6) coping with a very difficult home life, (7) being audited by the Internal Revenue Service in 1990 and 1991, and (8) dealing with insurance companies. At least half of the stresses directly resulted from Defendant's fraudulent business practices.

the rate shown on page 3. Benefits will start after the elimination period.[3]

Pl.'s Ex. A at 10. "Total disability ... means that sickness or injury makes you unable to engage in your regular occupation." *Id.* at 8. "Regular occupation" is defined as the claimant's "occupation when disability begins." *Id.* at 10.

On October 28, 1994, Plaintiff filed the present action, contending that the Policy does not cover Defendant's alleged disability. Thereafter, on April 5, 1996, Plaintiff moved for summary judgment.

## STANDARD

Summary judgment should be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). If the moving party shows that there are no genuine issues of material fact, the non-moving party must go beyond the pleadings and designate facts showing an issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A scintilla of evidence, or evidence that is merely colorable or not significantly probative, does not present a genuine issue of material fact. *United Steelworkers of America v. Phelps Dodge Corp.,* 865 F.2d 1539, 1542 (9th Cir.1989), *cert. denied,* 493 U.S. 809, 110 S.Ct. 51, 107 L.Ed.2d 20 (1989).

The substantive law governing a claim determines whether a fact is material. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987). Reasonable doubts as to the existence of a material factual issue are resolved against the moving party. *T.W. Elec. Serv.* at 631. Inferences drawn from facts are viewed in the light most favorable to the non-moving party. *Id.* at 630–31.

3. "Elimination period" includes "the number of days at the beginning of each period of disability

## DISCUSSION

### I. Arguments

Plaintiff contends that Defendant cannot recover under the Policy because he is legally, rather than factually, disabled as a result of the OBCE revoking his license. Furthermore, public policy precludes Defendant from collecting disability benefits for depression caused by his unethical and illegal activities.

Defendant responds by arguing that the Policy does not preclude recovery for mental disabilities resulting from intentional conduct. In addition, there are several causes of his disability which were not related to unethical or illegal business practices and developed prior to the revocation of Defendant's license. Even if Defendant retained his chiropractic license, he would be unable to work as a result of his mental disability. Finally, Defendant contends that Plaintiff waived its right to deny coverage due to public policy concerns because, with full knowledge of Defendant's legal problems and license revocation, Plaintiff paid disability benefits to Defendant from June 1991 to December 1993 without objection.

### II. Analysis

Because federal jurisdiction in this case is based upon diversity of citizenship under 28 U.S.C. § 1332, this Court must apply the law of Oregon, as if it were sitting as the Supreme Court of Oregon. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938).

#### A. Interpretation of the Policy

The present action is an insurance coverage dispute; therefore, the court must first examine the language of the policy at issue. Interpreting the language of an insurance policy is a question of law for the court. *Hoffman Construction Co. v. Fred S. James & Co.,* 313 Or. 464, 469, 836 P.2d 703, 706 (1992). " 'The primary and governing rule of the construction of insurance contracts is to ascertain the intention of the parties' based on the terms and conditions of the insurance

when you do not receive benefits."

policy." *Id.* (quoting *Totten v. New York Life Ins. Co.*, 298 Or. 765, 770, 696 P.2d 1082, 1086 (1985)). "Toward that end, the first step is to attempt to determine the plain meaning of the term or terms at issue." *Schutt v. Farmers Insurance Group of Companies*, 129 Or.App. 401, 404, 879 P.2d 1303, 1305 (1994) (citing *Hoffman* at 474, 836 P.2d 703), *rev. denied*, 320 Or. 272, 882 P.2d 1114 (1994). If the term is plain and unambiguous, the court's role is simply to enforce the common and ordinary meaning of it. *Schutt*, 129 Or.App. at 404, 879 P.2d at 1305 (citations omitted).

By contrast, "if the term is susceptible of more than one plausible interpretation, the court then must scrutinize the different plausible interpretations in light of the other provisions of the policy." *Interstate Fire & Cas. Co. v. Archdiocese*, 35 F.3d 1325, 1328 (9th Cir.1994) (citing *Hoffman*, 313 Or. at 474, 836 P.2d at 706). After this inquiry, if more than one plausible interpretation remains reasonable, the term is ambiguous and should be construed against the insurer. *Hoffman*, 313 Or. at 474–75, 836 P.2d at 706; *Archdiocese* at 1328. If the term is ambiguous, the trier of fact resolves the ambiguity. *Evenson Masonry, Inc. v. Eldred*, 273 Or. 770, 772, 543 P.2d 663, 664 (1975) (citing *May v. Chicago Insurance Co.*, 260 Or. 285, 292–93, 490 P.2d 150 (1971)).

In the present action, I find the language of the Policy clear and unambiguous. Defendant is "totally disabled" under the Policy if a "sickness or injury makes [Defen-

dant] unable to engage in [his] regular occupation." Policy, Pl.'s Ex. A at 8. "Regular occupation means [his] occupation when disability begins." *Id.* at 10. There is no exclusion in the Policy for sickness or injury resulting from Defendant's intentional acts, police investigations, license revocations, criminal indictments, or any other criminal proceeding. Therefore, under the Policy, the source of Defendant's disability (*i.e.*, sickness or injury) is irrelevant.

For the purposes of this motion, Plaintiff does not dispute whether Defendant is, in fact, disabled. Rather, Plaintiff contends that Defendant became legally disabled before the onset of his factual disability; thus, Defendant is not covered under the Policy.

Plaintiff correctly states, and Defendant concedes, that " 'disability insurance policies * * * provide coverage for factual disabilities * * * and not for legal disabilities.' " *Brumer v. National Life of Vermont*, 874 F.Supp. 60, 64 (E.D.N.Y.1995) (quoting *Goomar v. Centennial Life Ins. Co.*, 855 F.Supp. 319, 325 (S.D.Cal 1994)). However, Defendant argues that unlike in the cases cited by Plaintiff, Defendant also suffers from a concurrent factual disability.[4] Therefore, even if his license were not revoked, he could not practice chiropractic medicine because of his depression. Though Defendant's argument has some appeal in light of *Ohio Nat. Life Assur. Corp. v. Crampton*, 822 F.Supp. 1230 (E.D.Va.1993), *aff'd*, 53 F.3d 328 (4th Cir.1995),[5] the plain language of the Policy in this case is dispositive.

---

**4.** Plaintiff cites two cases, *Goomar*, 855 F.Supp. 319 (S.D.Cal.1994) and *Massachusetts Mutual Life Ins. Co. v. Ouellette*, 159 Vt. 187, 617 A.2d 132 (1992), which do not apply here because the claimants sought benefits for *only* a legal disability. In *Goomar*, the court denied disability benefits because "[p]laintiff's inability to practice his regular occupation [was] due to his license revocation rather than sickness or injury." 855 F.Supp. at 326. Likewise, in *Ouellette*, the Vermont Supreme Court refused to award benefits because "[claimant] would not have stopped practicing except for the initiation of criminal proceedings, which resulted in incarceration and the surrender of his license." 617 A.2d at 134.

**5.** In *Crampton*, on July 6, 1992, the insured was arrested and charged with several counts of aggravated sexual battery and exposing himself to a

minor. 822 F.Supp. at 1231. He pleaded guilty to the charges and was incarcerated on January 13, 1993. *Id.* In November 1992, he filed a claim for disability benefits from the date of his arrest. *Id.* at 1231–32. He stated that the cause of his disability was anxiety and depression. *Id.* at 1232. In response, the insurance company filed an action for declaratory judgment to determine whether the insured was entitled to benefits. *Id.* at 1231. The insurer argued, in part, that the incarceration was a superseding legal disability which prevented the insured from performing his job, regardless of his mental sickness. *Id.* at 1232.

In responding to this argument, the court distinguished other cases in which incarceration barred recovery of disability benefits because "it was *only* the 'legal disability' of imprisonment that precluded them from working and gave rise

If, in fact, Defendant was legally disabled (*i.e.,* his license was revoked) before he became factually disabled (*i.e.,* depressed), under the unambiguous language of the Policy, Defendant could not recover disability benefits as a chiropractor because, *at the onset of his disability,* Defendant's "regular occupation" was not practicing chiropractic medicine. *See, e.g., Brumer v. Nat. Life of Vermont,* 874 F.Supp. 60, 64 (E.D.N.Y.1995) ("If the onset of plaintiff's disability occurred during the period that his medical license was suspended, he would not be entitled to receive disability payments pursuant to the terms of the policies in question because his occupation at the time the disability arose was not that of a surgeon or even a physician.") Defendant applied for disability benefits on June 13, 1991. In the application form, he wrote that his disability started on May 24, 1991, Pl.'s Ex. H at 1, and he continued to work until May 24, 1991.[6] However, because Defendant's license was revoked on May 23, 1991, his "regular occupation," at the time of his disability on May 24, 1991, was not practicing chiropractic medicine. Therefore, Defendant is not entitled to disability benefits as a chiropractor under the plain language of the Policy.

**B. Waiver**

■ Though Defendant may not be entitled to disability benefits under the Policy, Defendant contends that by paying benefits for two years, Plaintiff waived the right to contest Defendant's entitlement to benefits. In Oregon, waiver is the intentional relinquishment or abandonment of a known right or privilege. *Moore v. Mutual of Enumclaw Ins. Co.,* 317 Or. 235, 240, 855 P.2d 626, 629 (1993) (citations omitted). Whether a waiver has occurred depends on the particular circumstances of each case. *Id.* (citations omitted).

However, waiver is an affirmative defense which must be pleaded or else waived as an affirmative defense. FRCP 8(c); *see Yellen v. Cooper,* 828 F.2d 1471, 1476 (10th Cir.1987) ("Waiver * * * is an affirmative defense which must be affirmatively pleaded)." (citing FRCP 8(c)); *see also Carothers v. Carothers,* 260 Or. 99, 104, 488 P.2d 1185, 1188 (1971) "modification, waiver and estoppel are affirmative defenses and must be pleaded as such." (citing *Miller Construction Co. v. Watts Construction Co.,* 223 Or. 504, 516, 355 P.2d 215 (1960), and *Cody v. Insurance Company of Oregon,* 253 Or. 587, 592, 454 P.2d 859 (1969)). Defendant failed to plead waiver in his Answer; thus, he may not assert that affirmative defense for the first time in this Motion for Summary Judgment. Consequently, I decline to rule on whether Plaintiff waived its right to contest Defendant's entitlement to benefits under the Policy.

**CONCLUSION**

Plaintiff's Motion for Summary Judgment (# 30–1) is GRANTED. Defendant is not entitled to disability benefits under the Policy and judgment shall be entered in favor of Plaintiff. Defendant's Counterclaim is DISMISSED. IT IS SO ORDERED.

---

to their claim for benefits." *Id.* at 1233. By contrast, the *Crampton* court reasoned, "If [the insured's] alleged disability passes medical muster * * * [the insured's] mental sickness, and not his incarceration, will be the true cause of his inability to work." *Id.* Therefore, the court held that, regardless of his incarceration, the insured was entitled to benefits, so long as he was genuinely disabled. *Id.*

6. The fact that Defendant continued to work until May 24, 1991 is alone sufficient to compel the conclusion that Defendant did not become "disabled" until May 24, 1991 because, under the plain language of the Policy, "disabled" means that the claimant is "unable to engage in [his] regular occupation." Obviously, Defendant did not become unable to engage in his occupation until sometime on May 24, 1991.