The **PAUL REVERE LIFE INSURANCE COMPANY, Plaintiff,**

v.

**Roy J. BAVARO, Defendant.**

No. 96 Civ. 1278 (SAS).

United States District Court,
S.D. New York.

Feb. 13, 1997.

Charles R. Melli, Jr., Melli & Wright, P.C., Paramus, NJ, John F. Triggs, Jacobson & Triggs, New York City, for plaintiff.

## OPINION AND ORDER

SCHEINDLIN, District Judge.

Plaintiff, Paul Revere Life Insurance Company ("Paul Revere"), moves for summary judgment on its claim for a declaratory judgment that defendant, Roy J. Bavaro ("Bavaro"), is not disabled within the meaning of its Preferred Professional Disability Income Policy, number 0102429166 (the "Policy"), because the Policy does not provide coverage for legal disabilities. Bavaro, in turn, cross moves for partial summary judgment dismissing the second count of the complaint in which plaintiff seeks to recover disability benefits paid to defendant prior to September 17, 1996.

For the purposes of its motion, Paul Revere concedes that as of April 19, 1994 and continuing to date, Bavaro has been and remains factually disabled as defined by the Policy.[1] Pl.'s 3(g) ¶¶ 8, 10. Bavaro suffers from anxiety neurosis as diagnosed by his personal physician and from post traumatic stress disorder as later diagnosed by a treating psychologist. *Id.* ¶ 7; Plaintiff's Notice of Motion, "Pl.'s Notice" Ex. D. This psychologist, Dr. Donald Erwin, states that Bavaro suffers from a personality disorder known as passive avoidant. Pl.'s Notice Ex. D.

There is also no dispute that beginning in April, 1993, Bavaro engaged in criminal conduct in the course of his occupation as an insurance broker culminating in a plea of guilty on January 4, 1995, to a single count of wire fraud.[2] Pl.'s 3(g) ¶¶ 15, 16, 20. On August 17, 1994, the Illinois Insurance Exchange notified Bavaro of suspected violations of Illinois insurance regulations. *Id.* ¶ 18. Bavaro offered no defense. *Id.* His Illinois broker membership was terminated on September 23, 1994. *Id.* In September 1994, the New York Insurance Department began an investigation of licensees through whom the entity Bavaro was affiliated with worked in New York. Pl.'s Mem. at 11. On October 18, 1994, Bavaro notified that Department that the entity was no longer conducting business in New York. Pl.'s 3(g) ¶ 19. On June 1, 1995, Bavaro's New Jersey insurance broker's license was revoked. *Id.* ¶ 21.

The issue to be determined in these cross motions is when did the defendant's legal disability occur and, if the legal disability was subsequent to the factual disability, whether that permits the insurance company to deny

[1] If the motions are denied, the parties are in dispute as to whether Bavaro's legal problems caused his psychological disability. Although plaintiff continually alludes to this dispute in its motion papers, plaintiff has conceded, in order to avoid raising a disputed issue of fact, either that the cause of the psychological disability is irrelevant or that defendant's psychological disability was not caused by his legal problems. Plaintiff's Memorandum of Law in Support of Motion for Summary Judgment, "Pl.'s Mem." at 10; Plaintiff's 3(g) Statement, "Pl.'s 3(g)" ¶ 9. In fact, Bavaro's doctor believes that Bavaro's criminal conduct resulted from his psychological and emotional conditions. Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment, "Def.'s Mem." at 6; Defendant's 3(g) Statement, "Def.'s 3(g)" ¶ 12.

[2] Paul Revere actually claims that the criminal conduct began on February 13, 1993, when Bavaro prepared the first fraudulent Premium Financing Agreement and Disclosure Statement. Pl.'s Mem. at 10.

disability benefits. For the reasons set forth below, plaintiff's motion is denied and defendant's cross motion is granted in part.

## I. Factual Background

On October 29, 1989, Bavaro executed an application for disability insurance to Paul Revere. Pl.'s Mem. at 3. He identified his employment as President of an insurance brokerage company. Pl.'s 3(g) ¶ 6. The parties agree that Bavaro had no known or diagnosed mental condition prior to executing the application.[3] *Id.* ¶ 9. Effective April 21, 1990, Paul Revere issued a disability insurance policy which included benefits for full lifetime total disability, cost of living for total or residual disability, and supplemental social insurance. *Id.* ¶ 1; Ex. A.

The following are the pertinent definitions set forth in Part 1 of the Policy:

1.5 **"Injury"** means accidental bodily injury sustained after the Date of Issuance and while your policy is in force.

1.6 **"Sickness"** means sickness or disease other than a Pre-existing Condition which causes loss commencing while Your Policy is in force ...

1.8 **"Your occupation"** means the occupation in which You are regularly engaged at the time You become Disabled.

1.9 **"Total disability"** means that because of Injury or Sickness:

A. You are unable to perform the important duties of Your Occupation; and

B. You are under the regular and personal care of a Physician.

Part 3 of the Policy sets forth the only exclusions, as follows:

3.1 **EXCLUSIONS**

We will not pay benefits for Disability:

A. Due to an act or accident of war, whether declared or undeclared; or

---

**3.** Plaintiff, for the purpose of this motion, admits that prior to April 19, 1994, Bavaro had a medical condition known as passive aggressive personality disorder, but that the condition was undiagnosed and untreated. Pl. 3(g) ¶ 9.

**4.** Plaintiff admits, for the purpose of this motion, that as of April 19, 1994, Bavaro had a sickness

B. Due to normal pregnancy or childbirth ...

*Id.* Ex. A.

On June 17, 1994, Bavaro executed a Proof of Claim form representing that he was totally disabled from his occupation as an insurance broker. *Id.* ¶¶ 5, 6. On July 20, 1994, Bavaro submitted notice and the Proof of Claim Form to Paul Revere seeking benefits under the Policy. His last day of work was March 1, 1994. Pl.'s Mem. at 7. Paul Revere has paid monthly benefits to Bavaro since August 1994, which were retroactive to July 19, 1994. Def.'s 3(g) ¶ 9.

Bavaro's illness was first treated by his internist on April 19, 1994, who concluded that Bavaro was under a great deal of stress resulting from his work. Pl.'s 3(g) ¶ 7. His internist prescribed medication and referred him to a psychologist. *Id.* On October 7, 1994, Bavaro began treatment with a second therapist. Pl.'s Notice Ex. D at 1.

Paul Revere continued making monthly payments without any reservation of rights until May 22, 1995. Def.'s 3(g) ¶ 11. Payment continued until February, 1996, when Paul Revere commenced this action for a declaratory judgment and the return of all disability benefits paid to Bavaro. *See* Pl.'s Notice Ex. A; Def.'s Mem. at 9. While the Policy permitted Paul Revere to require Bavaro to submit to an independent medical examination "as often as reasonably required" during the pendency of any claim for disability benefits, the first time Paul Revere did so was on September 17, 1996. Defendant's Supplemental 3(g) Statement, "Def.'s Sup. 3(g)" ¶¶ 1, 2.

## II. Summary of Argument

Paul Revere concedes, for the purposes of this motion, that Bavaro was factually disabled for the period during which he received disability benefits.[4] Pl.'s 3(g) ¶¶ 8, 10. Yet,

---

within the definition of the term in the Policy. Pl.'s 3(g) ¶ 8. Furthermore, plaintiff admits, for the purpose of this motion, that Bavaro's sickness is of a nature and degree that a return to the insurance business would result in reoccurrence of acute depression and anxiety associated with post-traumatic stress disorder. Pl.'s 3(g) ¶ 10;

Paul Revere argues that his factual disability is not the reason for his total disability. As quoted earlier, Section 1.9 states that " 'total disability' means that **because** of Injury or Sickness You are unable to perform the important duties of Your Occupation." (Emphasis added). Paul Revere first argues that Bavaro cannot perform the duties of his occupation because he is under a permanent legal disability from which he cannot recover. In the alternative, Paul Revere also argues that the legal disability predated the factual disability because the criminal conduct for which he was ultimately convicted **occurred** prior to the onset of his physical disability. *See* Pl.'s Mem. at 13–32.

Bavaro, in turn, argues that Paul Revere's motion must be denied as a matter of law, while his own motion must be granted. He bases this argument on the plain language of the insurance contract. At the time he became physically disabled, he was not under any legal disability which prevented him from performing his occupation. That he became legally disabled **subsequent to** his physical disability is irrelevant, as the policy does not exclude from coverage a person who becomes legally disabled following the onset of a physical disability. In addition, until May 22, 1995 Paul Revere never contested that Bavaro was physically disabled or the date of onset of that disability. As a result, Paul Revere is required to pay the disability benefits until such time as it had a basis to contest the presence or continuation of the factual or physical disability. *See* Def.'s Mem. at 14–33.

III. Discussion

A. *Legal Standard*

A party is entitled to summary judgment when there is "no genuine issue of material fact" and the undisputed facts warrant judgment for the moving party as a matter of law. Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In ruling on such a motion, the court must review the pleadings, depositions, answers to interrogatories, ad-

missions and affidavits, if any, in determining whether a genuine issue of material fact exists. *See* Fed.R.Civ.P. 56(c); *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. at 2552; *Lang v. Retirement Living Publ'g Co.,* 949 F.2d 576, 580 (2d Cir.1991). The burden of demonstrating the absence of a material factual dispute rests on the moving party. *See Gallo v. Prudential Residential Servs., Ltd.,* 22 F.3d 1219, 1223 (2d Cir.1994). Once that burden is met, the non-moving party must present "significant probative supporting evidence" that a factual dispute exists. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); Fed.R.Civ.P. 56(c).

The court's role is not to try issues of fact, but rather to determine whether issues exist to be tried. *See Balderman v. United States Veterans Admin.,* 870 F.2d 57, 60 (2d Cir. 1989); *Donahue v. Windsor Locks Bd. of Fire Comm'rs,* 834 F.2d 54, 58 (2d Cir.1987). All ambiguities must be resolved, and all inferences drawn, in favor of the party against whom summary judgment is sought. *See Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513–14; *Donahue,* 834 F.2d at 57, 60. If there is evidence in the record from which a reasonable inference could be drawn in favor of the non-moving party on a material fact, summary judgment is improper. *See Chambers v. TRM Copy Centers Corp.,* 43 F.3d 29, 37 (2d Cir.1994).

B. *The Insurance Contract*

■ In insurance disputes, the burden is on the insured to prove all facts necessary to show that his claim falls within the terms and conditions of coverage. *Preferred Accident Ins. Co. of New York v. Grasso,* 186 F.2d 987, 990 (2d Cir.1951). Interpreting the language of an insurance policy is a question of law for the court. If the term is plain and unambiguous, the court's role is simply to enforce the common and ordinary meaning of it. The insurer bears the burden of establishing that its interpretation of an exclusion is the only reasonable interpretation and if an insurer intends "to exclude certain cover-

Pl.'s Mem. at 8. *But see* Plaintiff's Reply Brief, "Pl.'s Reply" at 7, and *infra* note 6 and accompanying text.

age from its policy obligations, it must do so in 'clear and unmistakable language.'" *Seaboard Sur. Co. v. Gillette*, 64 N.Y.2d 304, 311, 486 N.Y.S.2d 873, 476 N.E.2d 272 (1984) (citations omitted).

■ The language of this Policy is clear and unambiguous. Defendant is "totally disabled" under the Policy if **because of** an injury or **sickness** he is unable to perform the important duties of his occupation. The Policy clearly and unambiguously requires an element of causation. Thus, defendant must establish that he cannot work because of his sickness. Defendant concedes there is no coverage for a legal disability and he is not seeking coverage on that ground.

The Policy has no exclusion for a disability arising from the commission of or participation in a felony. The Policy is also silent with respect to concurrent causes resulting in an inability to work. Finally, the Policy has no language referencing the chronology of events if there is more than one cause of a disability.

## C. *The Element of Causation*

Plaintiff relies on a series of cases in which insurance companies were successful in denying benefits to insured persons suffering from both a legal and factual disability. *See e.g., Damascus v. Provident Life and Accident Ins. Co.*, 933 F.Supp. 885 (N.D.Cal. 1996); *Grayboyes v. General American Life Ins. Co.*, 1995 WL 156040, 1995 U.S.Dist. Lexis 4233 (E.D.Pa.1995); *Goomar v. Centennial Life Ins. Co.*, 855 F.Supp. 319 (S.D.Cal.1994), *aff'd*, 76 F.3d 1059 (9th Cir. 1995); *Allmerica Fin. Life Ins. & Annuity Co. v. Llewellyn*, 943 F.Supp. 1258 (D.Or. 1996); *Massachusetts Mutual Life Ins. Co. v. Ouellette*, 159 Vt. 187, 617 A.2d 132 (Sup.Ct. Vt.1992). *See also, Hammond v. Fidelity and Guaranty Life Ins. Co.*, 965 F.2d 428 (7th Cir.1992); *Brumer v. Nat'l Life of Vermont*, 874 F.Supp. 60 (E.D.N.Y.1995). However, defendant correctly notes that in each of these cases the legal disability occurred

prior to the request for benefits based on the factual disability. Indeed, a number of the insureds in these cases suffered from an illness prior to the onset of the legal disability, but the illness did not become disabling until after that time.

Defendant has found a single case which directly supports his position. In *Ohio National Life Assurance Corp. v. Crampton*, 822 F.Supp. 1230 (E.D.Va.1993), *aff'd*, 53 F.3d 328 (4th Cir.1995), an insured, Andrew Duke, suffered from a disability stemming from "intentional, self-inflicted illnesses or sicknesses resulting from [the] insured's criminal activities." *Id.* at 1232 (citation omitted). Duke was arrested on July 6, 1992, pled guilty and was incarcerated in January, 1993 and sentenced, on March 17, 1993 to 80 years in prison. In November, 1992, Duke filed a claim for payment of disability benefits. The insurance company first argued that Duke's illness was a direct result of a deliberate act and is, therefore, not covered under the policy or that public policy precludes a criminal from profiting from his own wrongdoing. In the alternative, the company argued that Duke's incarceration is a superseding legal disability, which prevents Duke from working. The court rejected both arguments. It first found that the insurance company could have excluded coverage for illnesses arising from intentional, deliberate or criminal acts but had chosen not to do so. It further found that public policy will not be used to rewrite an insurance contract. Finally, the court held "[i]f the disability is medically bona fide and genuinely arose *prior to* Duke's incarceration, the fact that Duke was eventually imprisoned does not cut off his benefits." *Id.* at 1233 (emphasis added).[5]

Plaintiff's attempt to distinguish this case is very instructive. In its Reply Brief plaintiff first notes that this case has never been cited in any other reported decision. This, of course, is completely irrelevant. Then, plaintiff notes that there is a

---

**5.** The Court relied on the following language from a leading treatise on insurance law:
"[A]n insured may be continuously disabled and prevented from performing any and every duty pertaining to his occupation through dis-

ease, even though he is confined in prison during the entire period of his disability...."
15 G. Couch Cyclopedia of Insurance Law § 53.41 (2d ed. 1983).

critical difference between the *Crampton* case and the case at bar which negates its importance. In *Crampton,* both parties conceded that Mr. Duke had been and continued to be afflicted with a sickness which caused him to be unable to perform the substantial and material tasks of his occupation. As a result, the issue before the Court was whether Mr. Duke's incarceration was a superseding legal disability to cut off entitlement to benefits to which he was entitled prior to incarceration. (Sic) *The issue of the causal connection between a sickness and total disability was not in dispute in* **Crampton** *as it is in the case at bar.*[6]

Pl.'s Reply at 7 (emphasis added). Later in the same brief plaintiff writes "Mr. Bavaro has not demonstrated that his leaving the insurance industry, (sic) was caused by any sickness." *Id.*

### D. *The Existence of an Issue of Fact*

Plaintiff's "heads I win, tails you lose" approach is most distressing. At a series of pre-motion conferences the Court met with the parties and urged them not to move for summary judgment if there was a disputed issue of fact. Defendant's lawyer agreed that there were disputed issues of fact and sought an expedited trial date. Plaintiff's lawyer, on the other hand, insisted that there were no disputed issues of fact and that the case was therefore ripe for summary judgment. Plaintiff then submitted a Rule 3(g) statement of undisputed facts. This statement was rejected by this Court in a Memorandum Opinion dated October 21, 1996, because it was full of obviously contested factual issues. Plaintiff then submitted a second Rule 3(g) statement which purported to list only undisputed facts.

 Now, when faced with a precedent which would cause plaintiff to pay millions in disability benefits, plaintiff again reverts to its true position of asserting an issue of fact as to whether defendant ever was or is now unable to work **because of** his mental and emotional problems. Plaintiff essentially

makes the following argument. "If I am right that a subsequent legal disability cuts off liability, I don't care if his mental illness prevents him from working. But if his mental illness prevents him from working, and the subsequent legal disability is irrelevant, then I very much care about the issue and in fact argue that his alleged mental illness does not prevent him from working." This confusing and inconsistent position has created a conundrum resulting in an unusual waste of precious time. Plaintiff has clearly failed to meet its burden of demonstrating the absence of a material issue of fact.

 Having forced the Court down an ill-advised road, plaintiff must bear the consequences of its decision. Accordingly, I reach the following conclusions. The language of the Policy is unambiguous. If defendant demonstrates to the trier of fact that he is unable to work because of his mental and emotional problems then he is entitled to disability payments, despite the existence of his subsequent legal disability. If, however, the trier of fact believes that but for his legal disability he would be able to perform his occupation, then he is not entitled to disability payments. Plaintiff cannot recover for payments it made to defendant between March 1, 1994 and the reservation of rights that it made on May 22, 1995. During that time plaintiff made disability payments based on defendant's submission of medical proof of a mental disability that prevented him from engaging in his occupation. Plaintiff never sought an independent medical examination nor reserved its right to challenge defendant's claim. On the other hand, once it did reserve its rights, plaintiff has standing to challenge defendant's claim that he was unable to work **because of** his alleged mental illness. In short, in order to successfully defend this lawsuit and continue to recover under the Policy defendant must show that, as of May 22, 1995 and up to the present, he has a "sickness" and that this "sickness" caused his "total disability."

---

**6.** Plaintiff seems to have forgotten the concessions made in its Rule 3(g) statement of undisputed facts, in which plaintiff basically admitted the causal connection between defendant's sickness and total disability. *See supra* note 4; Pl.'s 3(g) ¶ 10.

## IV. Conclusion

For the reasons set forth above, plaintiff's motion for summary judgment is denied and defendant's motion is granted in part. A conference is scheduled for February 14, at 11:00 a.m.

So Ordered: