SOLOMON v ROYAL MACCABEES LIFE INSURANCE COMPANY

Docket No. 213969. Submitted October 18, 2000, at Detroit. Decided
    November 28, 2000, at 9:00 A.M.

Neil Solomon, M.D., Ph.D., brought an action in the Oakland Circuit
    Court against Royal Maccabees Life Insurance Company, seeking to
    recover disability insurance benefits pursuant to a disability insur-
    ance policy and a policy covering overhead expenses. The disabil-
    ity insurance policy provided benefits in the event that the plaintiff
    was prevented by an accident or illness from performing the sub-
    stantial and material duties of his regular occupation. The plaintiff
    alleged that his severe bipolar affective disorder caused him to
    become totally and permanently disabled. The plaintiff alleged that
    the bipolar disorder caused him to have improper sexual relation-
    ships with his female patients. The plaintiff voluntarily surrendered
    his medical license as a result of investigations and lawsuits involv-
    ing his relationships with female patients and thereafter sought the
    insurance benefits. The court, Fred M. Mester, J., granted the
    defendant's motion for summary disposition, finding that the plain-
    tiff established the existence of a factual disability, but that his
    legal disability, the surrender of his medical license, was the actual
    cause of his inability to practice medicine. The plaintiff appealed.

    The Court of Appeals held:

    1. Disability insurance policies generally provide coverage for
    factual disabilities, such as illness or injury, but not for legal disa-
    bilities. However, if a claimant suffers from both a factual disability
    and a legal disability and the factual disability is medically bona
    fide and genuinely arose before the legal disability, the fact that the
    legal disability arose later will not necessarily terminate a claim-
    ant's right to disability benefits. However, the claimant must
    demonstrate that the factual disability was the cause of the claim-
    ant's inability to work.

    2. It is not disputed that the plaintiff has bipolar disorder. How-
    ever, the disorder did not prevent the plaintiff from performing the
    substantial and material duties of his regular occupation. It was not
    until the plaintiff voluntarily surrendered his license that he was
    unable to perform those duties. The court properly granted sum-
    mary disposition on the basis that the plaintiff's legal disability,

rather than his bipolar disorder, was the cause of his inability to practice medicine.

Affirmed.

JANSEN, P.J, dissenting, stated that the trial court improperly made a factual finding in concluding that the defendant was entitled to summary disposition. There is a material factual dispute in the evidence, i.e., whether the plaintiff stopped his practice because of the loss of his medical license (a legal disability) or because of his depression (a factual disability). The judgment should be reversed and the matter should be remanded for resolution of the factual dispute by the jury.

INSURANCE — DISABILITY INSURANCE — FACTUAL DISABILITIES — LEGAL DISABILITIES.

Disability insurance policies generally provide coverage for factual disabilities, such as illness or injury, but not for legal disabilities; if a claimant suffers from both a factual disability and a legal disability and the factual disability is medically bona fide and genuinely arose before the legal disability, the fact that the legal disability arose later does not necessarily terminate the insured's right to disability benefits where the insured demonstrates that the factual disability was the cause of the insured's inability to work.

*Sullivan, Ward, Bone, Tyler & Asher, P.C.* (by *Ronald S. Lederman*), for the plaintiff.

*Denison Maxwell P.L.C.* (by *Elaine A. Parson*), for the defendant.

Before: JANSEN, P.J., and DOCTOROFF and O'CONNELL, JJ.

O'CONNELL, J. Plaintiff appeals as of right from an order granting defendant's motion for summary disposition, MCR 2.116(C)(10). On appeal, plaintiff argues that summary disposition was improper because he presented sufficient evidence to establish a question of fact that precluded summary disposition. Plaintiff also argues that the trial court erred in failing to address his argument that defendant's experts' opin-

ions lacked sufficient foundation to be considered as substantive evidence. We affirm.

On March 19, 1997, plaintiff filed a complaint against defendant to recover disability insurance benefits pursuant to a disability insurance policy and a policy covering overhead expenses. Plaintiff's disability insurance policy provided benefits in the event that, because of "accident or illness," plaintiff was prevented from performing the "substantial and material duties of his regular occupation." In his complaint, plaintiff alleged that he was a medical doctor who maintained a full-time practice in Baltimore, Maryland, until June 1993, when his severe bipolar affective disorder caused him to become totally and permanently disabled. According to plaintiff, his bipolar disorder caused him to have improper sexual relationships with his female patients. In October 1993, plaintiff voluntarily surrendered his license to practice medicine in Maryland. Plaintiff admitted that defendant paid him disability benefits and overhead expenses from November 22, 1993, to January 22, 1994, but alleged that defendant ceased paying benefits when it incorrectly determined that plaintiff was not totally and permanently disabled. Plaintiff sought to recover the amount of unpaid benefits.

On May 11, 1998, plaintiff filed a motion for partial summary disposition with regard to the issue of defendant's liability. Plaintiff asserted that, throughout his adult life, he had been afflicted with bipolar disorder, otherwise known as manic depression, and that his disorder forced him to voluntarily cease practicing medicine during the summer of 1993 and ultimately to surrender his medical license in October 1993. On that same date, defendant filed its motion for sum-

mary disposition, arguing that plaintiff was fully able to practice medicine and that only his voluntary surrender of his medical license prevented him from doing so. Defendant argued that plaintiff did not become depressed until June 1993, when one of his lovers began to blackmail him, a number of his former patients commenced legal proceedings against him, and the Maryland Board of Physician Quality Assurance (board) began to investigate him. Defendant further argued that plaintiff's inability to practice medicine was not the result of his bipolar disorder because plaintiff had practiced successfully for thirty years notwithstanding the disorder. Defendant also contended that, while plaintiff claimed to have been disabled in June 1993, he did not seek psychiatric help or discontinue treating patients until August of that year. Therefore, defendant argued, plaintiff was not disabled in June 1993 because he was able to continue treating patients.

At the hearing on the parties' respective motions for summary disposition, the trial court recognized that the sole issue in this case was which of two possible causes, plaintiff's medical illness or the surrender of his license, prevented him from performing the substantial and material duties of his regular occupation. The trial court determined that plaintiff established the existence of a factual disability, but that his legal disability was the actual cause of his inability to practice medicine. Therefore, the trial court granted defendant's motion for summary disposition and denied plaintiff's motion for partial summary disposition.

Plaintiff argues that the trial court erred in granting defendant's motion for summary disposition. Accord-

ing to plaintiff, a factual question existed regarding whether he sustained a factual, versus a legal, disability, and this factual question prevented the trial court from granting defendant's motion for summary disposition. Plaintiff's position is that the uncontradicted evidence established that he had suffered from bipolar disorder since his late teens and that his condition worsened after he suffered a severe head injury in an automobile accident in 1982. After that time, plaintiff began having inappropriate sexual relationships with his patients, and because of his impaired condition, he was unable to control and prevent this inappropriate behavior.

A generally recognized principle of insurance law is that the burden of proof lies with the insured to show that the policy covered the damage suffered. 10 Couch, Insurance, 3d, § 147:29, p 147-46; *Williams v Detroit Fire & Marine Ins Co*, 280 Mich 215, 218; 273 NW 452 (1937). We review de novo a trial court's grant or denial of a motion for summary disposition. *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998). When reviewing a motion for summary disposition granted pursuant to MCR 2.116(C)(10), we consider the affidavits, pleadings, depositions, admissions, and documentary evidence in the light most favorable to the nonmoving party. *Morales v Auto-Owners Ins Co*, 458 Mich 288, 294; 582 NW2d 776 (1998). A motion for summary disposition under MCR 2.116(C)(10) is proper if no genuine issue of material fact exists, thereby entitling the moving party to judgment as a matter of law. *Id.*

Plaintiff testified during his deposition that he became very depressed in June 1993 and decided to decrease the amount of time that he spent treating

patients. The record below contained evidence that plaintiff also stopped paying blackmail money to a woman with whom he had had a sexual relationship for seven or eight years. When plaintiff refused to continue paying, the woman reported to the board that plaintiff had had inappropriate sexual relationships with his patients. Several patients, along with the woman who allegedly blackmailed plaintiff, then filed a lawsuit against him in June or July 1993, and plaintiff became severely depressed and contemplated suicide. He then visited Dr. Neil Pauker, who referred him to Dr. Chester W. Schmidt, Jr.

Dr. Schmidt, a psychiatrist, diagnosed plaintiff with bipolar disorder toward the end of 1993 or the beginning of 1994. He first treated plaintiff on August 24, 1993, and determined, at that time, that plaintiff suffered from depression. Dr. Schmidt then completed a claim form indicating that plaintiff was unable to practice medicine, and plaintiff submitted the form to defendant. The form indicated that plaintiff was partially disabled from June 19, 1993, until August 14, 1993, and that, thereafter, he was totally disabled.

Plaintiff admitted during his deposition that he had had numerous inappropriate sexual relationships with many different women, some of whom were patients, and that the board was investigating him as a result. He testified that he feared that he would again initiate sexual relationships with patients if he were to resume practicing medicine. He further testified that he signed a letter permanently surrendering his medical license only because he was horribly depressed and unable to defend himself and that signing the letter was the only way to prevent the board from

releasing the information to the media. The letter read, in pertinent part:

> I understand that this letter of surrender shall be considered a PUBLIC document immediately upon its acceptance by the Board of Physician Quality Assurance (the "Board"). I also understand that this surrender of my medical license is and shall be considered IRREVOCABLE.
>
> My decision to surrender my license to practice medicine has been prompted by an investigation of my practice by the Board. The Board initiated this investigation after it received several complaints, and after it became aware of several civil actions filed against me by former patients, all of which alleged that I instigated improper sexual contact with patients during the physician/patient relationship.
>
> I admit that for at least the past 20 years, I have used my position as a physician to instigate a wide range of sexual relations with at least eight women patients. This conduct included acts of sexual intercourse, as well as other explicit sex acts. These activities took place in my medical office during patient visits, as well as in other locations. I admit that I engaged in sexual misconduct with my patients during the physician/patient relationship. I admit that I engaged in this conduct with multiple patients over the same time period. I recognize that these patients developed a sense of trust, confidence and dependence through the physician/patient relationship, and that I misused my influence as a physician and the trust my patients placed in me for my own sexual gratification. I admit that it was improper to engage in any sexual relationship with any patient.
>
> The Board's investigation resulted in charges under the Maryland Medical Practice Act (the "Act").

Dr. Schmidt testified that plaintiff had not had any inappropriate sexual relationships since his treatment began. He determined that plaintiff had suffered bipolar disorder his entire life, along with long periods of hypomania, and that a severe head injury that he suffered in an automobile accident in 1982 may have

made him more susceptible to developing bipolar disorder. Dr. Schmidt testified that plaintiff would never be able to return to work because he would be at risk of again initiating inappropriate sexual relationships. Dr. Schmidt admitted that plaintiff could possibly restrict his practice to the treatment of men and children only, but that returning to the practice of medicine could destabilize plaintiff's mood. Therefore, Dr. Schmidt determined that plaintiff was permanently and completely disabled from treating patients and that his medical disability both preceded, and was a factor contributing to, his legal disability.

Dr. Gerald A. Shiener, one of defendant's experts, reviewed plaintiff's file for the purpose of advising defendant on how to proceed with plaintiff's claim, but he did not personally examine plaintiff. Dr. Shiener testified that he had no doubt that plaintiff had bipolar disorder, but that it did not appear that plaintiff was disabled. Dr. Shiener also testified that he saw no evidence of a longstanding history of bipolar disorder.

Dr. Scott A. Spier, defendant's other expert, reviewed plaintiff's file, interviewed plaintiff, and conducted a telephone conference with Dr. Schmidt regarding plaintiff's condition. Dr. Spier testified, among other things, that Dr. Schmidt informed him that if plaintiff had a medical license, he would be able to return to work. Dr. Spier concluded that plaintiff had bipolar disorder, but that the disorder did not constitute a disability.

Generally, disability insurance policies provide coverage for factual disabilities, such as illness or injury, but not for legal disabilities. 10 Couch, Insurance, 3d, § 149:9, p 146-24. If a claimant suffers from both a factual and a legal disability, however, and the factual

disability is medically bona fide and genuinely arose before the legal disability, the fact that the legal disability arose later will not necessarily terminate a claimant's right to disability benefits. *Ohio Nat'l Life Assurance Corp v Crampton*, 822 F Supp 1230, 1233 (ED Va, 1993). The claimant must demonstrate that his factual disability was the cause of the claimant's inability to work. *Paul Revere Life Ins Co v Bavaro*, 957 F Supp 444, 449 (SD NY, 1997).

In *Massachusetts Mut Life Ins Co v Millstein*, 129 F3d 688, 689 (CA 2, 1997), the defendant, an attorney, filed a claim with the plaintiff insurance carrier for disability benefits, contending that he was unable to work because he suffered from attention deficit disorder (ADD), conduct disorder (CD), and a chemical dependency. The plaintiff eventually refused to pay benefits and brought an action seeking declaratory judgment, claiming that the loss of the defendant's license to practice law was the cause of his inability to work. *Id.* at 690. The Connecticut Statewide Grievance Committee suspended the defendant's license on July 6, 1994, following his diversion of funds from his employer in 1986, the fraudulent facilitation of loans from clients between 1990 and 1992, and the diversion of funds from his clients' trust fund accounts in 1993 and 1994. *Id.* The defendant was subsequently charged with criminal conduct for his misuse of client funds and was convicted and sentenced to serve six years' imprisonment. *Id.* He argued in response to the plaintiff's motion for summary judgment, and on appeal, that his ADD, CD, and chemical dependency impaired his judgment and caused him to commit the wrongful conduct that resulted in the loss of his license. *Id.* The United States Court of Appeals for the Second Circuit recognized that the question

whether a disability caused the loss of earned income is often a jury question, but held as a matter of law that the defendant's criminal conduct was the cause of his losing his license to practice law and the resulting loss of income. *Id.* at 691. In making this determination, the court emphasized that the defendant did not seek treatment for his disorders until his license to practice law was threatened, that he practiced law successfully for many years despite the disorders, and his admission that, but for the loss of his license, he had the ability to perform legal work. *Id.* The court also stated that to impose liability on the plaintiff in that case would have been contrary to public policy in that it would have rewarded the defendant for his criminal conduct. *Id.* at 691. Therefore, the court affirmed the district court's grant of summary judgment in favor of the plaintiff. *Id.* at 692.

In *Massachusetts Mut Life Ins Co v Ouellette*, 159 Vt 187, 192; 617 A2d 132 (1992), the Vermont Supreme Court affirmed the grant of summary judgment in favor of the plaintiff insurance company. The defendant, an optometrist, was convicted of lewd and lascivious conduct with a minor and was sentenced to a term of imprisonment. *Id.* at 187. As part of the plea agreement underlying the defendant's conviction, he agreed to surrender his license to practice optometry. *Id.* at 188. The defendant did not dispute that he practiced optometry despite suffering from an atypical paraphilia for approximately ten years before his incarceration and the loss of his license. *Id.* After his conviction, he filed a claim seeking disability insurance benefits, asserting that his illness rendered him totally disabled. *Id.* The trial court granted summary judgment in favor of the plaintiff, and the Vermont Supreme Court affirmed, holding that the defendant

presented no evidence to contradict the trial court's conclusion that the defendant's legal disability, rather than his mental illness, was the cause of his inability to work. *Id.* at 189-191. The opinion emphasized testimony that the defendant was able to practice optometry for ten years after his disorder manifested itself and that the defendant would have continued to practice had he not been incarcerated and lost his license. Therefore, summary judgment in favor of the plaintiff was proper. *Id.* at 191.

In the present case, defendant does not dispute that plaintiff has bipolar disorder. However, defendant asserts that the disorder did not prevent plaintiff from performing the substantial and material duties of his regular occupation. We agree. Viewing the evidence in the light most favorable to plaintiff, as we are required to do in reviewing motions for summary disposition under MCR 2.116(C)(10), we accept as true that plaintiff has suffered from bipolar disorder for most of his life. Nevertheless, as in *Millstein* and *Ouellette, supra,* plaintiff was able to practice in his field for at least twenty years despite his disorder. Plaintiff did not become unable to work until 1993. Plaintiff's actions, although certainly inappropriate, did not prevent him from performing his job and running a highly successful practice. Not until plaintiff decided to voluntarily surrender his license was he unable to carry out the duties of his regular occupation.[1] Further, Dr. Schmidt testified that had plaintiff

---

[1] The federal district court in *Goomar v Centennial Life Ins Co,* 855 F Supp 319, 320 (SD Cal, 1994), aff'd 76 F3d 1059 (CA 9, 1996), also granted summary judgment in favor of the plaintiff's insurance carriers. The plaintiff, a medical doctor, contended that visions of astral beings caused him to sexually molest four female patients when he was in private practice. *Id.* The plaintiff continued to practice medicine for three years without

not surrendered his license he would have been able
to treat a significant portion of the population with-
out risk.[2] We also note that plaintiff continued to treat
patients after he claimed to be totally disabled,
although he worked far fewer hours than before.
Finally, we cannot ignore that plaintiff made no men-
tion of his bipolar disorder in the letter in which he
voluntarily surrendered his medical license. In fact,
plaintiff admitted that he chose to surrender his
license in order to quell any media exposure.

---

incident after the sexual assaults, but his license to practice medicine was
ultimately revoked as a result of the sexual assaults. *Id.* at 321, 323. He
filed claims for disability benefits in March 1992, claiming that a psycho-
logical disability led to the conduct that caused the revocation of his
license. *Id.* The defendants denied the plaintiff's claims and moved for
summary judgment after the plaintiff sued to recover the unpaid benefits.
*Id.* The district court found that the plaintiff was trying to recover bene-
fits for a legal disability, rather than for a factual disability, and that the
plaintiff's inability to practice medicine was solely due to the revocation
of his license. *Id.* at 325-326.

[2] In *Grayboyes v General American Life Ins Co*, 1995 WL 156040 (ED
Pa, April 4, 1995), the plaintiff was an orthodontist for approximately
twenty years before his license to practice dentistry was revoked on July
19, 1991, for a five-year period. *Id.* at 1-2. The plaintiff had improperly
touched many young female patients in a sexual manner and was arrested
on October 31, 1990, with respect to one such incident. *Id.* at 1. He
pleaded guilty to the charges and received a four-year term of probation.
*Id.* at 2. At about the same time that he was arrested, the plaintiff began
treatment with a psychiatrist, who diagnosed the plaintiff with frotteur-
ism, a form of paraphilia involving intense sexual urges to touch and rub
against others. *Id.* On May 30, 1991, the plaintiff filed a claim for disability
benefits, which the defendant denied. *Id.* at 2-3. After trial, the district
court entered judgment in favor of the defendant, finding that, but for the
suspension of his license, the plaintiff was able to perform the material
and substantial duties of his occupation and was not totally disabled
within the meaning of his insurance policy. *Id.* at 5. Particularly influential
to the court were the facts that the plaintiff was able to exercise some
control over his urges (as his selectivity in choosing his victims evi-
denced), he was able to treat a significant portion of the population (i.e.,
males and adult females) without risk, and he was able to practice ortho-
dontics for twenty years with the same condition that he claimed was dis-
abling. *Id.*

Plaintiff also argues that the trial court erred in failing to address his argument that defendant's experts' opinions lacked sufficient foundation to be considered as substantive evidence. Because we conclude as a matter of law that the trial court properly granted defendant's motion for summary disposition, we need not address this issue. The testimony of defendant's experts was not essential to the trial court's ruling.

Affirmed.

DOCTOROFF, J., concurred.

JANSEN, P.J. (*dissenting*). I respectfully dissent. This case, stripped to its essence, is simple. The question is whether plaintiff has presented sufficient evidence to create a material factual dispute regarding whether he is entitled to disability benefits under an insurance policy issued by defendant. More specifically, the question is whether plaintiff cannot perform the "substantial and material duties of his regular occupation" because of an illness. Although the trial court correctly identified the issue, it improperly made a factual finding in concluding that defendant was entitled to summary disposition. I state the trial court's findings made on the record here:

> *The Court*: Now, the sole issue before the Court is whether Plaintiff cannot perform the substantial and material duties of his regular occupation, because of his mental illness or because he has a legal disability as a result of the loss of his license to practice medicine. An insurance company is not liable for loss of earned income that results from a license suspension or other consequences of the insured's unlawful behavior of—and that's the [case of *Massachusetts Mut Life Ins Co v Ouellette*, 159 Vt 187; 617 A2d 132 (1992).]

In the *Ouellette* case and in [*Goomar v Centennial Life Ins Co*, 855 F Supp 319 (SD Cal, 1994), aff'd 76 F3d 1059 (CA 9, 1996)], the Courts were influenced by the fact that the insured was able to perform his duties without the legal restriction placed on him. The evidence establishes that Plaintiff suffered from bipolar disorder, which is a permanent medical disability, from at least June 19, 1993.

Further, although Plaintiff apparently saw patients between June and August, he did not maintain his regular practice. The parties present the testimony of various physicians who evaluated Plaintiff, either through treatment, by reviewing his records, or through a professional or social relationship with him. It's the opinion of Plaintiff's treating physician, Dr. Schmidt, that since June 25, 1993, Plaintiff was—had remained unable to practice medicine, due to his psychiatric condition, which predated his legal difficulties.

Dr. Sheiner reviewed Plaintiff's medical records and found Plaintiff's behavior inconsistent with a disabling conditioning [sic], and that he was not disabled. Dr[s]. Nyman, Pauker, Coller, DePaulo, and Fagan, opined that Plaintiff had bipolar disorder. Dr. Spier also testified that Plaintiff has bipolar disorder and that his sexual behavior was possibly affected by his mood disorder.

The expert testimony does not establish the [plaintiff] lying as to whether he became disabled in June or when he sought treatment in August, 1993. Having established that Plaintiff had a factual disability, this Court must determine if it preceded his legal disability.

As to the legal disability, the evidence establishes that Plaintiff surrendered his license on October 27, 1993 as a result of the Board investigation of his practice, which was initiated after several complaints and several actions were filed against him by former patients. *The problem with this case, it's difficult to determine from the evidence whether Plaintiff stopped practice because he had the civil actions filed against him and complaints had been made by patients, resulting in the loss of his license, or because he was severely depressed. Logically, however, if he stopped seeing patients only due to his disability, the question the Court would have, why wouldn't he have given up his*

*license and just waited until his condition improved
instead of foreclosing his ability to practice?*

I'm, therefore, going to rule in favor of the Defendants
[sic] in this case and find that this was—that it was the
investigation by the Medical Board and the resulting loss of
his license that caused his inability to work and not his
mental disability. [Emphasis added.]

Apparently, the standard for reviewing a motion brought under MCR 2.116(C)(10) bears reiteration because both the trial court and the majority have misapplied it in this situation. "A motion for summary disposition under MCR 2.116(C)(10), which tests the factual support of a claim, is subject to de novo review." *Smith v Globe Life Ins Co*, 460 Mich 446, 454; 597 NW2d 28 (1999). In reviewing a motion under MCR 2.116(C)(10), the court must consider the pleadings, depositions, affidavits, admissions, and documentary evidence filed in the action or submitted by the parties, MCR 2.116(G)(5), in a light most favorable to the nonmoving party. *Smith, supra*, p 454, citing *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). A motion under MCR 2.116(C)(10) may be granted if the evidence shows that there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. *Quinto, supra*, p 362. As stated by our Supreme Court:

The court is not permitted to assess credibility, or to
determine facts on a motion for summary judgment. *Zamler
v Smith*, 375 Mich 675, 678-679; 135 NW2d 349 (1965).
Instead, the court's task is to review the record evidence,
and all reasonable inferences therefrom, and determine
whether a genuine issue of any material fact exists to war-
rant a trial. [*Skinner v Square D Co*, 445 Mich 153, 161; 516
NW2d 475 (1994).]

The trial court's finding that it is difficult to determine from the evidence whether plaintiff stopped his practice because of the loss of his medical license (a legal disability) or because of his depression (a factual disability) leads to only one conclusion: namely, that there is a material factual dispute in the evidence that must be resolved by the trier of fact, here, the jury. Consequently, defendant is clearly not entitled to judgment as a matter of law. The trial court, having correctly identified the question of fact to be resolved, whether plaintiff stopped practice because of his legal disability or because of his factual disability, then incorrectly resolved this factual issue in favor of defendant. The court cannot make factual findings in ruling on a motion for summary disposition under MCR 2.116(C)(10). *Skinner, supra,* p 161; *Nesbitt v American Community Mut Ins Co,* 236 Mich App 215, 225; 600 NW2d 427 (1999).

The majority, unfortunately, compounds the error by stating that "[n]ot until plaintiff decided to voluntarily surrender his license was he unable to carry out the duties of his regular occupation." *Ante,* p 385. This, again, is a factual finding from the evidence, which actually shows that there is a factual dispute regarding whether plaintiff stopped working because of his mental illness or because he voluntarily relinquished his medical license.[1]

---

[1] Indeed, taken in a light most favorable to plaintiff, Dr. Schmidt testified during his deposition that plaintiff's illness took place well before he lost his medical license and that plaintiff is permanently disabled from taking care of patients. Further, in letters written by Dr. Schmidt, he stated that plaintiff was disabled from at least June 19, 1993, and that he had suffered from a severe depressive episode in June 1993. It was not until July 1993 that the lawsuits were filed against plaintiff by his former patients, and it was in September 1993 that plaintiff voluntarily offered to surrender his medical license.

This appeal is not about whether plaintiff is a "good" person or a "bad" person, nor is it about Dr. Schmidt's credibility; it is about whether there is a question of fact based on the evidence presented by the parties whether plaintiff was no longer able to perform his job because of an illness. There is clearly a question of fact based on the evidence presented and that question must be resolved by a jury, not by the trial court or by this Court. Both the trial court and the majority have improperly usurped the exclusive province of the jury by determining the critical factual issue to be resolved in this case.

I would reverse and remand for trial.