NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0234n.06

Case No. 25-1783

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
May 26, 2026
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| EXPRESS JEWELRY ENTERPRISES, INC., d/b/a Haks Jewelry, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| NATIONAL FIRE INSURANCE COMPANY OF HARTFORD, | ) | MICHIGAN |
| | ) | |
| | ) | OPINION |
| Defendant-Appellee. | ) | |
| | ) | |

Before: McKEAGUE, READLER, and BLOOMEKATZ, Circuit Judges.

READLER, Circuit Judge. Mother Nature's excesses resulted in a water-logged store and, ultimately, an insurance dispute. Express Jewelry Enterprises, Inc., and National Fire Insurance Company of Hartford have a difference of opinion on whether Express Jewelry's insurance policy covers damage to its store caused by an evening of torrential rain. After examining the record, the district court determined at summary judgment that the policy does not. We agree.

I.

Express Jewelry's store in Dearborn, Michigan, was damaged during a storm of historic proportions. Over the course of the evening of June 25, 2021, extending into the early hours of June 26, Dearborn experienced seven and a half inches of rain. Unfortunately, the precipitation overwhelmed the city's sewer system, which was designed to handle at most three inches of rain

per day. With more water present than the sewer could handle, Express Jewelry's drainage system (which led into the city sewer system) backed up and flooded the store's basement.

Express Jewelry filed a claim with its insurer, National Fire, for the damage to its basement caused by the high water. National Fire, however, denied the claim. In so doing, National Fire pointed to language in Express Jewelry's insurance policy explaining that the insurer would not "pay for . . . damage to . . . [t]he interior of any building . . . caused by rain . . . unless" the "building . . . first sustains actual damage to the roof or walls by wind or hail." R. 15-2, PageID 482. But, Express Jewelry countered, it had purchased a coverage extension. Under that provision, National Fire would "pay for loss or damage . . . caused by water that backs up or overflows from a sewer [or] drain." *Id.* at PageID 607. That extension, however, was subject to its own carveout: National Fire would not pay if the "emanation of water from a sewer or drain . . . [was] caused by[] or is the result of" a flood. *Id.* The policy in turn defined a flood as "a general and temporary condition of partial or complete inundation of normally dry land areas." *Id.* at PageID 497; *see also id.* at PageID 614 (incorporating the original policy's definition of "flood"). Because a flood caused the basement damage, National Fire concluded the flood exclusion relieved it from covering any loss.

Express Jewelry also filed a claim for water damage to its ground floor. The parties disputed the source of the ground floor damage. Express Jewelry initially told the insurer that the water came up from the basement via the elevator, which had filled with water while on the basement level. When the elevator was activated, it rose to the first floor and opened its doors, spilling water across the store's main floor. National Fire's inspector concurred, noting that there was no sign of water leaking from the ceiling onto the main floor or damage to the building's roof that would otherwise explain the presence of water on the ground floor. National Fire informed

2

Express Jewelry in December that the policy likewise did not cover this damage because of the flood exclusion.

Express Jewelry then seemingly changed its story. Seeking payment under the policy's coverage for rain damage when the building first sustained wind damage to its walls, the jeweler attributed the flooding to a wall partly destroyed by heavy wind, which allegedly allowed water to enter from that point onto the ground floor. Express Jewelry also claimed that it had new images and a video taken by the store's owner that proved wind damage was the source of the ground floor flooding.

Express Jewelry's new documentation triggered an additional inspection by National Fire. Two main conclusions surfaced. One, that a hole in the building's side exposed by displaced siding did cause water to leak into the store, as depicted in Express Jewelry's photographs and video. But two, that any water leaking from the hole in the building's side was not the source of the June water damage because any exposure from the wall did not begin before August at the earliest. Critical to that second conclusion was metadata from the video and images revealing that they were taken in December (after the claim was denied), not during the June storm, as Express Jewelry insisted. Another firm analyzed the metadata to confirm that the video and pictures were created using iPhone software that Apple did not release until October of that year. To the same end, images of the building from August revealed no damage to the siding. That reality was consistent with the fact that there was not the sort of staining or organic growth around the leaking areas one would expect to find if the damage had been present for over six months. Based on these findings, National Fire again denied Express Jewelry's claim.

Displeased with this outcome, Express Jewelry filed suit for declaratory judgment and breach of contract. The district court granted summary judgment to National Fire, prompting today's appeal.

## II.

We begin with the legal framework guiding our review. Start with the standard by which we measure the district court's conclusion. We review the grant of summary judgment de novo. *Delek US Holdings, Inc. v. United States*, 32 F.4th 495, 497 (6th Cir. 2022) (quoting *Fisher v. Nissan N. Am., Inc.*, 951 F.3d 409, 416 (6th Cir. 2020)). In so doing, we construe the evidence in the light most favorable to Express Jewelry. *Id.* (quoting *Fisher*, 951 F.3d at 416). Having done so, we then determine whether any issue of material fact would prevent the award of summary judgment and, if not, whether National Fire was entitled to judgment in its favor. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986) (quoting Fed. R. Civ. P. 56).

Next, the substantive rules. Michigan law controls our interpretation of the parties' insurance contract. *See Tooling, Mfg. & Techs. Ass'n v. Hartford Fire Ins. Co.*, 693 F.3d 665, 670 (6th Cir. 2012). In the Wolverine State, standard rules of contract interpretation apply to insurance contracts. *McDonald v. Farm Bureau Ins. Co.*, 747 N.W.2d 811, 820 (Mich. 2008). Our task is thus to enforce the contract as written. *Kyocera Corp. v. Hemlock Semiconductor, LLC*, 886 N.W.2d 445, 451 (Mich. Ct. App. 2015) (quoting *Mahnick v. Bell Co.*, 662 N.W.2d 830, 833 (Mich. Ct. App. 2003) (per curiam)). To do so, we ask first whether the contractual language is unambiguous. *Port Huron Educ. Ass'n, MEA/NEA v. Port Huron Area Sch. Dist.*, 550 N.W.2d 228, 237 (Mich. 1996). If so, we need not wade into the deeper waters of consulting extrinsic evidence. *See Kyocera Corp.*, 886 N.W.2d at 451 (quoting *Mahnick*, 662 N.W.2d at 833). Lastly, with regard to Express Jewelry's claim that National Fire breached the parties' contract, the

"burden of proof lies with the insured to show that the policy covered the damage suffered." *Solomon v. Royal Maccabees Life Ins. Co.*, 622 N.W.2d 101, 103 (Mich. Ct. App. 2000).

A. Express Jewelry contends that the damage to its store's basement was a covered loss. Recall that Dearborn's sewers were overwhelmed by rain, which resulted in the basement drain backing up, flooding the basement. That backdrop tees up today's legal question: Was the backup "caused by[] or . . . the result of" a "general and temporary condition of partial or complete inundation of normally dry land areas"? R. 15-2, PageID 497, 607. If so, the policy's flood carveout would control and exclude any liability for National Fire.

We believe it was. The downpour on the night of June 25 amounted to an "inundation of normally dry land areas." National Fire presented multiple pieces of evidence at summary judgment that declared the event a flood. Indeed, even Express Jewelry's owner described the event as a flood. And it is easy to see why. There was too much precipitation that evening for the city sewer to handle, so water pooled in normally dry areas. The pooled water precluded the sewers from draining properly, thereby keeping them overwhelmed for a sustained period. And everyone seemingly acknowledged that this rainfall and pooling caused the drain backup.

On this record, the contract's application is straightforward. The excess rainfall resulted in a "condition of partial or complete inundation of normally dry land areas." R. 15-2, PageID 497. That inundation overwhelmed the sewer systems, causing the drain backup. And it was this backup—a consequence of inundation of typically dry land—that resulted in water emanating from Express Jewelry's drain and the subsequent damage to the basement. The policy language therefore excludes coverage for the damage.

Resisting this natural reading, Express Jewelry says the damage was caused not by a flood but by "inadequate capacity" in the sewer system. Appellant Br. 18. That is because a sewer

system—as an area that is not normally dry—cannot be flooded. Therefore, Express Jewelry concludes, the loss resulted from sewer backup, not flooding, which the company says is a covered loss.

Not quite. Putting aside the question of whether the sewer itself could flood, the sewer's capacity crisis was undoubtedly a result of flooding. Absent excessive rain, there would have been no inundation of normally dry land, no capacity issues with the sewer, and no problems with the sewer draining rather than backing up into Express Jewelry's basement. So while Express Jewelry might recast this development as a "sewer backup event," Reply Br. 3–4, our inquiry, guided by the policy's language, is whether flooding caused that event. It did.

Express Jewelry paints our conclusion as inconsistent with a host of other sources it says supports its position, including a Dearborn city government statement as well as a district court opinion interpreting an insurance policy with a different flood exclusion. But these general sources tell us little about the specific language in this contract. Nor does Express Jewelry explain how these sources otherwise bear on the question here.

All told, the plain, unambiguous language of the exclusion applies to the basement flooding Express Jewelry experienced, meaning National Fire was correct to deny coverage.

B. That leaves Express Jewelry's claim for coverage for water damage to the main floor. Consistent with the foregoing discussion, if the source of the water damage was sewer backup that rose to the main floor via the elevator, the damage is not insured. National Fire offered evidence to that effect, including an insurance adjuster's report finding no evidence of damage to the exterior walls or any leaking from the ceiling and instead ascribing the water's source to the basement. A forensic engineer's separate inspection likewise revealed no evidence of wind damage to the building's walls.

Express Jewelry has not convinced us otherwise. In response to National Fire's summary judgment motion, Express Jewelry had to put forward evidence to support a contrary view of the cause of the damage to the store's main floor. *See Solomon*, 622 N.W.2d at 103. Looking back at Express Jewelry's complaint, its theory of causation at that point was that "large amounts of rainwater . . . could not exit" the store "due to a blockage in its drain." R. 1-2, PageID 14. Yet as the district court recognized, the contract's language, which excludes damage caused by drain backups that are a result of flooding, forecloses that theory of causation.

Express Jewelry's alternative theory fares no better. According to that line of thinking, the damage to the main floor was the result of wind damage from the June storm, which created an opening in the side of the building, allowing water into the main floor. Express Jewelry's only evidence to that effect, however, was video and photographs the store's owner produced. And that evidence is (at best) deeply suspect. Unrefuted metadata analysis produced by National Fire revealed that the store owner's video and photographs were created in December, six months after the June storm. The insurer likewise provided pictures showing that there was no hole in the store's wall even as late as August, again, months after the storm.

Express Jewelry denies those conclusions, pointing to its owner's deposition testimony that the photos and video were taken in June. But "self-serving testimony" that is "blatantly and demonstrably false" and supported only by "[c]onclusory statements unadorned with supporting facts" is not enough to survive summary judgment. *Davis v. Gallagher*, 951 F.3d 743, 750 (6th Cir. 2020); *Viet v. Le*, 951 F.3d 818, 823 (6th Cir. 2020) (quoting *Alexander v. CareSource*, 576 F.3d 551, 560 (6th Cir. 2009)). As no reasonable jury would believe Express Jewelry's account of the facts, the district court did not err in finding there was no genuine dispute over whether the June storm caused the hole in the store wall. *See Matsushita Elec. Indus. Co. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)). In the end, without any reliable evidence that wind damage from the June storm was the cause of its loss, Express Jewelry cannot carry its burden at summary judgment. *See Celotex*, 477 U.S. at 322 ("Rule 56[] mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

\*    \*    \*    \*    \*

We affirm.